## Richmond

### Marion Newell v. Dorkin Riggins, Jr.

November 28, 1955.

Record No. 4425.

Present, Hudgins, C. J., and Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*H. Rexford Taylor* and *Louis Ellenson*, for the plaintiff in error.

*Hall, Martin & Smith*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

On November 4, 1953, an automobile owned and operated by Dorkin Riggins, Jr., and in which Marion Newell was a non-paying passenger, left a public highway and crashed head-on into a tree. The automobile was practically demolished and both of its occupants injured. As a result, Marion Newell instituted this action against Riggins to recover damages for the personal injuries sustained by her in the accident.

Upon trial the court instructed the jury on questions relating to contributory negligence, concurring negligence, unavoidable accident, and gross negligence. The jury returned a verdict for the defendant, the trial court entered judgment accordingly, and we granted this writ of error.

The facts are brief, undisputed and without material conflict.

Marion Newell, aged twenty-four, a resident of the City of Newport News, Virginia, attended a dance on the evening of November 3, 1953, held in the Non-Commissioned Officers Club at near-by Fort Eustis, in the City of Warwick, Virginia. There she met the defendant, Riggins, a Sergeant in the United States Army. Near the end of the dance, he asked her if she had a way to go home. She replied that she had not. He then asked if he could take her home, and she said "Yes." At approximately 11:45 p. m., the defendant, accompanied by the plaintiff and Sergeant Jones of Fort Eustis, left the Club, in the defendant's automobile, and drove to Jones' barracks. Jones got out of the automobile and the defendant, accompanied by the plaintiff, who was riding on the front seat with him, drove his car out of Fort Eustis and thence along a public road towards State Highway Route 168.

The plaintiff said that she did not have a license to operate an automobile and did not know how to drive one; that she did not see anything in the conduct of the defendant or in his manner of driving that caused her to feel that he did not know what he was doing; and that feeling at ease, after she observed his operation of the car, she laid her head on the back of the seat and "dozed." That was all she remembered until she was awakened by the jarring of the car in its collision with the tree. She suffered severe injuries to her face and right pelvis.

Route 168 is a four-lane highway running in a northerly and southerly direction. At the scene of the accident it is straight in

both directions for a considerable distance, and at the time in question the road surface was dry, the weather clear, and the visibility good. White lines divide the two lanes running south and the two lanes running north. A double white line separates the dual lanes. The defendant was familiar with the highway, and after he entered upon it he proceeded in the right-hand outer lane traveling to the south.

The defendant said that he had not drunk any alcoholic beverage prior to the accident, except two cans of beer between 8:30 and 11:00 p. m. He and the plaintiff had no conversation after Sergeant Jones left the car. In his own language, he stated: "I took Sergeant Jones down to the barracks and left him off and then I started towards Newport News and came to the gate and proceeded down #168 and somewhere along, I dozed. I woke up a few yards from the tree; but I couldn't do anything about it and I hit the tree." He remembered that he was last driving in the far right southbound lane, and that before "dozing off" was operating his automobile at from 35 to 45 miles an hour. Asked if, immediately before the accident, there were any cars in that vicinity, he replied: "I can't say, sir, because I dozed and you say 'immediately before the accident' and that means right before." Asked if he was feeding gas to the engine, he answered, "I can't say. I dozed. I was asleep," and added that as far as he knew he made no attempt to apply the brakes.

Riggins said his car was equipped with good lights, good tires and good brakes; that he was familiar with Highway No. 168; that he did not know how long he had been asleep before the accident; and that whatever the plaintiff did it had nothing to do with his going to sleep, and did not interfere in any way with his operation of the car. He stated that he did not observe the plaintiff take any intoxicating beverage; that her conduct was that of a refined lady; and although she rested her head on his shoulder, when she dozed off to sleep, it didn't bother his driving. He made no explanation of the cause or reason why he "dozed" off or went to sleep.

Upon redirect examination by his counsel, Riggins was asked: "Sergeant, this sleep, dozing, that came upon you was it instantaneous or did you feel yourself getting sleepy?" He answered: "I didn't feel myself getting sleepy. It came all at once. I didn't doze and wake up. It just came all at once. That is all."

The accident happened about 12:20 a. m., November 4th. Two

police officers came to the scene immediately thereafter. They said the defendant explained the accident by saying that he "dozed off and by the time he ran off the shoulder of the road, he woke up about then, and it was too late; and he came up in contact with a tree." They said that while the defendant had a faint odor of beer about him, he appeared to be rational and not under the influence of ardent spirits.

The physical evidence showed that defendant's car traveled left along and across the highway for a distance of about 90 feet and thence easterly over the shoulder of the road, a sloping ditch, and brush and undergrowth on adjoining land for 30 feet, and then struck a tree nine inches in diameter.

The issues for our determination are: (1) Whether, under the evidence, defendant was guilty of gross negligence as a matter of law or whether it was a question for the jury; (2) Whether the act of the plaintiff in going to sleep constituted contributory negligence; and (3) Whether the trial court erred in granting and refusing certain instructions.

■ We will first dispose of the question of contributory negligence. The facts relating thereto are undisputed and without conflict.

In the absence of any notice that the operator of an automobile is operating or about to operate his car in a negligent or reckless manner or is incompetent to drive, a guest in his car is under no duty to direct or control the driver; but may trust him until it becomes clear that such trust is misplaced. *Steele* v. *Crocker*, 191 Va. 873, 62 S. E. (2d) 850; *Garst* v. *Obenchain*, 196 Va. 664, 672, 85 S. E. (2d) 207.

There was nothing to indicate to the plaintiff or to forewarn her that the defendant was apt to go to sleep while driving his car, or that he would be inattentive or careless about his duties as a driver. The fact that she was asleep bore no causal relation to the accident. The defendant himself states positively that there was no act of the plaintiff which helped, aided or contributed towards bringing about the cause of her injury,—an admission binding upon him. *Massie* v. *Firmstone*, 134 Va. 450, 114 S. E. 652; *Crew* v. *Nelson*, 188 Va. 108, 114, 49 S. E. (2d) 326. The facts are such that reasonable men should not differ as to the conclusion that plaintiff was not guilty of contributory negligence. The record in this case does not disclose any evidence of contributory negligence on the part of the plaintiff,

and the trial court so agreed during the argument upon the instructions.

■ The next question is whether the trial court should have held that the defendant was guilty of gross negligence as a matter of law, or should have presented that question to the jury for determination.

We have followed the general rule that the fact that the operator of a motor vehicle permits himself to go to sleep while driving is sufficient to make out a *prima facie* case of want of due and proper care. *Lee* v. *Moore,* 168 Va. 278, 282, 191 S. E. 589; *Jones* v. *Pasco,* 179 Va. 7, 10, 18 S. E. (2d) 258; 138 A. L. R. 1385; *Lipscomb* v. *O'Brien,* 181 Va. 471, 476, 25 S. E. (2d) 261.

However, a non-paying passenger is not entitled to recover damages against the operator of a car for injuries sustained resulting from the operation of such vehicle, unless the injuries were caused by the "gross negligence or willful and wanton disregard of the safety of the person * * * on the part of such owner or operator." Virginia Code, § 8-646.1.* 5 Am. Jur., Automobiles, § 241, page 635.

The existence of gross negligence, like all other kinds of negligence, is ordinarily a question of fact for the jury under the peculiar circumstances of each case, and only becomes a question of law for the court when, under the applicable rules of negligence, reasonable men should not differ as to the proper conclusion to be drawn from the evidence. *Jones* v. *Pasco, supra; Lipscomb* v. *O'Brien, supra; Alspaugh* v. *Diggs,* 195 Va. 1, 6, 7, 77 S. E. (2d) 362.

See also 64 A. L. R. 136; 86 A. L. R. 1147; 96 A. L. R. 1481; 138 A. L. R. 1388; 28 A. L. R. (2d) 12; *Bushnell* v. *Bushnell,* 103 Conn. 583, 131 A. 432, 44 A. L. R. 785; *Blood* v. *Adams,* 269 Mass. 480, 169 N. E. 412.

Sleep does not ordinarily come to a normal person without some previous warning of its approach. To fall asleep while driving is usually the result of neglect in failing to heed the warning. Before sleep comes there is usually some drowsiness, a tendency to doze, or

---

* "No person transported by the owner or operator of any motor vehicle as a guest without payment for such transportation and no personal representative of any such guest so transported shall be entitled to recover damages against such owner or operator for death or injuries to the person or property of such guest resulting from the operation of such motor vehicle, unless such death or injury was caused or resulted from the gross negligence or willful and wanton disregard of the safety of the person or property of the person being so transported on the part of such owner or operator."

to become dull or dizzy. The desire to sleep may be induced by fatigue, loss of sleep, or a variety of other circumstances over which the driver may or may not have control; but the signals of the approach of sleep manifest themselves clearly under normal conditions. When the driver of an automobile fails to heed the signals he relaxes the vigilance which the law requires. If there are any facts which excuse him from the charge of negligence, the burden is upon him to produce them. Whether or not his lack of vigilance manifests a smaller amount of watchfulness than the circumstances require of a person of ordinary prudence, amounting to a complete neglect of the safety of another, is a question for the jury, unless reasonable men may not differ as to the proper conclusion to be drawn therefrom.

Under the Virginia statute, the driver of a car is liable if injury to his guest passenger results from gross negligence, whether such negligence be an utter disregard of prudence, or be willful and wanton conduct of commission or omission, which partakes to some appreciable extent, though not entirely, of the nature of a deliberate and intentional wrong.*

No matter what may be the cause of sleepiness, it is not probable that sleep would come to a driver of an automobile without some prior warning. The jury may take this probability into account. The fact of going to sleep cannot be adopted as a tailor-made defense to negligence.

In *Thornhill* v. *Thornhill,* 172 Va. 553, 563, 2 S. E. (2d) 318, we quoted with approval from *Altman* v. *Aronson,* 231 Mass. 588, 121 N. E. 505, 4 A. L. R. 1185, 1187, the following:

" 'Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence * * *. It falls short of being such reckless disregard of probable consequence as is equivalent to a willful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from willful and intentional conduct which is, or ought to be, known to have a tendency to injure.' "

We approved that statement again in *Wright* v. *Osborne,* 175 Va. 442, 445, 9 S. E. (2d) 452, and then said:

"Stated in somewhat different terms, gross negligence is that de-

---

* See *Boward* v. *Leftwich,* 197 Va. 227, 230, 231, 89 S. E. (2d) 32, for the distinction between gross negligence and wanton or willful conduct.

gree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another. There is no sharp, well-defined, dividing line between simple negligence and gross negligence. The distinction is one of degree."

To the same effect see also *Chappell* v. *White*, 182 Va. 625, 630, 29 S. E. (2d) 858; *Reel* v. *Spencer*, 187 Va. 530, 47 S. E. (2d) 359; *Crabtree* v. *Dingus*, 194 Va. 615, 74 S. E. (2d) 54; *Kennedy* v. *McElroy*, 195 Va. 1078, 81 S. E. (2d) 436; *Garst* v. *Obenchain, supra.*

In *Alspaugh* v. *Diggs, supra,* the above cases and others were reviewed by Chief Justice Hudgins, and the principles therein stated reaffirmed: There we said:

"Proof of gross negligence depends upon the facts and circumstances of each particular case. If reasonably fair-minded men may differ as to the conclusion of fact to be drawn from the evidence, a jury question is presented; if reasonably fair-minded men may not differ as to such conclusion of fact, the question of whether gross negligence has been established becomes one of law to be decided by the court notwithstanding the verdict of the jury. *Lennon* v. *Smith*, 173 Va. 322, 2 S. E. (2d) 340."

It is true that the defendant said he didn't feel himself getting sleepy and that it came all at once, under questioning by his counsel. He also said at other times that he "dozed" as he proceeded on the highway. There is a recognized difference between dozing and sleeping. In common use and ordinary acceptation, "dozing" is a semi-conscious condition—a condition of being half-asleep—usually the first phase of sleep, a fully unconscious condition.

Not making any colorable attempt to explain why he dozed or went to sleep, the defendant created an issue of fact regarding due care, and the question whether he exercised a smaller amount of watchfulness and circumspection than the circumstances required of a person of ordinary prudence and was guilty of an utter disregard of prudence was, in view of the principles stated and the evidence, one for the jury.

This brings us to the assignments of error relating to the granting and refusing of instructions. The printed record does not contain all of the instructions granted or refused. The briefs refer to them merely by number or by a letter of the alphabet. According to the original record, the court granted four instructions at the request of the plaintiff, and refused nine others over her objection.

Eleven were granted at the request of the defendant. Plaintiff objected and excepted to seven of these. She contended that they were misleading in their definition of gross negligence, that they improperly told the jury it might consider whether plaintiff was guilty of contributory or concurring negligence, and whether the accident was unavoidable. A discussion of each assignment would serve no useful purpose in view of our ultimate conclusion. What we have hereinbefore said points out the principles of law applicable to the evidence presented.

It is clear from what we have said that the questions of contributory and concurring negligence were for the court and not for the jury. There was no evidence upon which the instructions given could be based. Instruction "H" relating to unavoidable accident should not have been given for the same reason. The trial court expressed such an opinion; but nevertheless granted the instruction. There are no factors, circumstances or evidence in the record to show that the act of the defendant in going to sleep could not have been foreseen and prevented by him by the exercise of ordinary care and prudence. As we have said, he did not even undertake to make an explanation.

For the reasons stated, the verdict of the jury is set aside, the judgment of the trial court reversed, and the case remanded for a new trial under proper instructions.

*Reversed and remanded.*