**Richmond**

NAPOLEON HARGROVE, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 0055-89-2

Decided July 31, 1990

Counsel

John W. Luxton (Morchower, Luxton and Whaley, on brief), for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

Opinion

MOON, J.—Napoleon Hargrove, Jr., fell asleep while driving on Jefferson Davis Highway in the City of Richmond and struck and killed a pedestrian who was walking across the highway. In a bench trial, he was convicted of involuntary manslaughter. We hold that under the facts and circumstances of the case, the evidence was insufficient to show that Hargrove's conduct constituted "negligence so gross, wanton, and culpable as to show a reckless disregard of human life." *Tubman v. Commonwealth*, 3 Va. App. 267, 270, 348 S.E.2d 871, 873 (1986).

On appeal, the decision of a trial court sitting without a jury is afforded the same weight as a jury's verdict and will not be disturbed unless plainly wrong or without evidence to support it. *King v. Commonwealth*, 217 Va. 601, 604, 231 S.E.2d 312, 315 (1977). We construe the evidence in the light most favorable to the Commonwealth, affording to it all reasonable inferences fairly deducible therefrom. *Martin v. Commonwealth*, 4 Va. App. 438,

443, 358 S.E.2d 415, 418 (1987).

At 8:20 a.m. on July 7, 1988, Hargrove was driving on Jefferson Davis Highway in the City of Richmond. His car passed a car which was in the right lane of the three lanes on his side of the median strip. After passing the other car, as his car was moving from the left lane into the middle lane, his car hit the pedestrian, who was walking across the highway and had nearly reached the median strip. The driver of the vehicle he passed testified that after Hargrove's car struck the pedestrian it appeared to slow down, then moved into the left lane and made a left turn.

The investigating officer traced Hargrove to his residence, advised him of his rights and questioned him about the "hit and run." At first, Hargrove told the officer that, on his way home from work that morning, he had struck a bridge abutment. Enroute to police headquarters, Hargrove confessed to the officer that he hit the pedestrian. At the station, Hargrove wrote a statement which read, "I had only been working the 12 a.m. - 8 a.m. shift for one day. I had a hard time sleeping during the day so I was extremely tired coming home. I dosed (sic) off for one second and it was over. And I started to panic." The statement was admitted into evidence, was uncontradicted by other evidence, and, from the trial judge's statements, was found to be the true account of the accident.

Although involuntary manslaughter may be found from the accidental killing of a person during the improper performance of some lawful act, *Gooden v. Commonwealth*, 226 Va. 565, 571, 311 S.E.2d 780, 784 (1984), the killing must be the proximate result of a lawful act performed in a manner so gross, wanton and culpable as to show a reckless disregard of human life. *Id.* Criminal negligence is an essential element of the offense. *Id.*; *see also King*, 217 Va. at 607, 231 S.E.2d at 316. An important distinction between involuntary manslaughter and lesser offenses "is the likelihood of injury to other users of the highways." *Mayo v. Commonwealth*, 218 Va. 644, 648, 238 S.E.2d 831, 833 (1977). To support an involuntary manslaughter conviction, the Commonwealth must prove "a homicide was not improbable under all of the facts existing at the time, and that the knowledge of such facts should have had an influence on the conduct of the offender." *Tubman*, 3 Va. App. at 274, 348 S.E.2d at 875.

■ In *Newell v. Riggins*, 197 Va. 490, 90 S.E.2d 150 (1955), the Supreme Court held that evidence that the defendant had fallen asleep while driving was sufficient to create a jury issue on the issue of gross negligence. However, *Newell* is a civil case and there is a distinction between "gross negligence" sufficient to support a civil claim requiring that degree of negligence, and negligence that is so wanton and willful as to support a conviction for involuntary manslaughter. "Willful and wanton negligence involves a greater degree of negligence than gross negligence, particularly in the sense that in the former an actual or constructive consciousness of the danger involved is an essential ingredient of the act or omission . . . ." *Keech v. Commonwealth*, 9 Va. App. 272, 280, 386 S.E.2d 813, 818 (1989).

In criminal cases, courts in other states have held that when a driver falls asleep and causes death a jury issue is created on the issue whether it constituted involuntary manslaughter. *See* 7A Am. Jur. 2d *Automobiles and Highway Traffic* § 335 (1980); Annotation, *Criminal Responsibility of Motor Vehicle Operator for Accident Arising From Physical Defect, Illness, Drowsiness, or Falling Asleep*, 63 A.L.R.2d 983 (1959). However, most of the cases involve more evidence than in this case that the driver was on notice that it was "not improbable from all of the facts existing at the time," *Tubman*, 3 Va. App. at 274, 348 S.E.2d at 875, that a homicide would occur.

In *Kennedy v. Commonwealth*, 1 Va. App. 469, 339 S.E.2d 905 (1986), we upheld a reckless driving conviction when the driver fell asleep. In *Kennedy*, the defendant knew he was fatigued and sleepy and had been driving several hours in that condition before the accident. These facts distinguish *Kennedy* from this case. In this case, all the record shows about Hargrove is that he had worked the previous night and was "extremely tired" and in need of sleep. We do not know, as we did of Kennedy, that Hargrove should have known that it was not improbable that he would fall asleep during his travel from the workplace to home. Kennedy, in fact, had stopped shortly before the accident to refresh himself after becoming sleepy. In this case, the record is devoid of evidence as to the distance or time it would have required Hargrove to drive from work to home. If Hargrove had been operating his vehicle for a number of hours in a tired and sleepy condition, or while in such a state undertook a trip of such a substantial dis-

tance or time that he should have known he might fall asleep, the evidence might support a finding that he was acting in reckless disregard for human life. *See In re Lewis*, 11 N.J. 217, 94 A.2d 328 (1953). However, the evidence does not show that Hargrove should have known that from his conduct "a homicide was not improbable under all of the facts existing at the time, and that the knowledge of such facts should have had an influence on [his] conduct . . . ." *Tubman*, 3 Va. App. at 274, 348 S.E.2d at 875. The evidence does not exclude the reasonable hypothesis that, although Hargrove had worked all night, he had not fallen asleep, had not previously dozed during the trip before the accident, and, although tired and in need of sleep and having only a short distance or a trip of a few minutes to reach his home, he could reasonably have believed that he could negotiate his vehicle a short distance without endangering human life.

Accordingly, the judgment appealed from is reversed.

*Reversed and remanded.*

Koontz, C.J., and Keenan, J., concurred.