514 S.E.2d 364

**Christopher Scott CONRAD**

v.

**COMMONWEALTH of Virginia.**

**Record No. 0321-98-2.**

Court of Appeals of Virginia,
Richmond.

May 11, 1999.

Lee W. Kilduff (Morchower, Luxton & Whaley, on brief), Richmond, for appellant.

Leah A. Darron, Assistant Attorney General (Mark L. Earley, Attorney General, on brief), for appellee.

Present: BENTON, COLEMAN and ELDER, JJ.

ELDER, Judge.

Christopher Scott Conrad (appellant) appeals from his bench trial conviction for involuntary manslaughter. He contends the evidence was insufficient to prove he acted in a

criminally negligent manner. For the reasons that follow, we reverse appellant's conviction.

## I.

## FACTS

At about 9:00 a.m. on May 11, 1997, on Gayton Road in Henrico County, appellant fell asleep at the wheel of his automobile and drove off the road, striking and killing Judy Dahlkemper, a jogger. Officer R.J. Smith responded to the scene. Shortly after 11:00 a.m., after examining the physical evidence, Smith took appellant's statement. Smith described appellant as "extremely tired" and having bloodshot eyes, and he noticed a faint odor of alcohol about appellant's person. Appellant reported to Smith that he had last slept on May 10, the day before the accident, arising at 11:00 a.m. after six hours of sleep. It was not unusual for appellant to stay up for long periods of time because he had been working an irregular schedule at a retail store and playing in a band. On May 10, appellant worked a shift at the retail store, ran errands, practiced with his band, and went to the home of a friend in Richmond. While at his friend's home, between about 11:00 p.m. and 1:30 a.m., appellant consumed about fifty ounces of beer.[1] He remained at his friend's home, awake and watching television, until about 8:45 a.m., at which time he left to return home. Appellant testified that he was not sleepy before he left for home and that it had not occurred to him that he might fall asleep on the drive home.

Appellant traveled about twenty minutes on Interstate 64 to Gaskins Road. As appellant exited Interstate 64, "he really

---

1. When Officer Smith first asked appellant whether he had consumed any alcohol, appellant said he had not. When Officer Smith asked appellant for consent to test his blood for alcohol, appellant admitted his alcohol consumption. A blood test performed "a little after noon" on May 11 was negative for drugs or alcohol. During argument, the trial court commented, "[T]here's no evidence that his drinking . . . was the cause of [the accident]," and the court made no mention of appellant's drinking in finding him guilty.

got tired and felt himself going to sleep." Because he was only about five minutes or four-and-one-half miles from home, "he did not really want to stop." He reported to Officer Smith that "he ran off the road only after dozing off for a half second, caught himself drifting four or five times, still nodding, but said he would catch himself and said [he] would snap out of it." On Gayton Road, a little over one-half mile from his home, he fell asleep and heard a loud noise. He initially thought someone had hit his car with a bottle, but then he saw the body and stopped his vehicle.

Another driver on the road, Mary Elizabeth Harris, testified that she had been behind appellant, who was traveling at the forty-five mile-per-hour speed limit, for approximately two-tenths of a mile before she saw his car veer right into a turn lane and strike the jogger, who had been running, facing traffic, on the edge of the turn lane near the adjacent grass. Appellant's vehicle displayed no turn indicator and did not brake prior to impact. Officer Smith determined that the jogger had been eighteen inches from the edge of the pavement when she was struck, and he confirmed that appellant had not applied his brakes prior to impact.

Appellant testified at trial, giving substantially the same version of events he had given to Officer Smith at the scene. He testified that when he turned onto Gayton Road, he began to yawn, was "incredibly close to dozing off," and "was starting to kind of drift ... in the road." However, he "[did not] recall" telling Officer Smith that he had caught himself about to doze off on four to five occasions prior to the accident and said he believed that he told Officer Smith he had done so only one or two times. He also said he had not gone off the road prior to the accident but had "com[e] [within] about ... an inch [of] the line."

In finding appellant guilty of involuntary manslaughter, the trial court found that appellant had been awake for twenty-two hours and "felt himself just about going to sleep," allowing "his car ... [to] drift[ ] over to the right ... on four or five different occasions" as he was "nodding in and out." Although

appellant had "previously dozed prior to the accident," observed the court, "he chose to continue to drive to try to make it home." The trial court concluded that "[appellant] was operating that motor vehicle in a state that he knew very well or should have known very well that he may, in fact, fall asleep" and that his conduct was "gross, wanton, and culpable, [and] showed a disregard for human life."

## II.

### ANALYSIS

 When considering the sufficiency of the evidence on appeal in a criminal case, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *See Higginbotham v. Commonwealth,* 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

> The weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide. However, whether a criminal conviction is supported by evidence sufficient to prove guilt beyond a reasonable doubt is not a question of fact but one of law.

*Bridgeman v. Commonwealth,* 3 Va.App. 523, 528, 351 S.E.2d 598, 601–02 (1986).

 "Involuntary manslaughter in the operation of a motor vehicle is defined as an 'accidental killing which, although unintended, is the proximate result of negligence so gross, wanton, and culpable as to show a reckless disregard of human life.'" *Keech v. Commonwealth,* 9 Va.App. 272, 275, 386 S.E.2d 813, 815 (1989) (quoting *King v. Commonwealth,* 217 Va. 601, 607, 231 S.E.2d 312, 316 (1977)). The degree of negligence required to sustain an involuntary manslaughter conviction is referred to as criminal negligence. *See, e.g., King,* 217 Va. at 607, 231 S.E.2d at 316. It results when one " 'act[s] consciously in disregard of another person's rights or ... with reckless indifference to the consequences, with the

defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another.' " *Tubman v. Commonwealth,* 3 Va.App. 267, 271, 348 S.E.2d 871, 873 (1986) (quoting *Griffin v. Shively,* 227 Va. 317, 321, 315 S.E.2d 210, 213 (1984)). Such negligence is judged under an objective standard and, therefore, may be found to exist where the offender either knew or should have known the probable results of his acts. *See Keech,* 9 Va.App. at 279, 386 S.E.2d at 817 (citing *Bell v. Commonwealth,* 170 Va. 597, 611–12, 195 S.E. 675, 681 (1938)).

" 'The law recognizes three degrees of negligence, (1) ordinary or simple, (2) gross, and (3) willful, wanton and reckless.' " *Tubman,* 3 Va.App. at 270, 348 S.E.2d at 873 (quoting *Griffin,* 227 Va. at 321, 315 S.E.2d at 212). The third type, which forms the basis for criminal negligence, is greater than ordinary negligence or even gross negligence, both of which have application in the civil context. *See Hargrove v. Commonwealth,* 10 Va.App. 618, 621, 394 S.E.2d 729, 731 (1990); *Tubman,* 3 Va.App. at 270–71, 348 S.E.2d at 873; *see also Essex v. Commonwealth,* 228 Va. 273, 280, 322 S.E.2d 216, 219 (1984). Ordinary negligence is "failure to use 'that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury to another.' " *Tubman,* 3 Va.App. at 271, 348 S.E.2d at 873 (quoting *Griffin,* 227 Va. at 321, 315 S.E.2d at 212–13). Gross negligence "is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence. . . . It falls short of being such reckless disregard of probable consequence as is equivalent to a willful and intentional wrong." *Newell v. Riggins,* 197 Va. 490, 495, 90 S.E.2d 150, 153 (1955) (citation omitted). Finally, criminal or willful and wanton negligence, as defined above, is " '[m]arked by or manifesting arrogant recklessness of justice, of the rights or feelings of others, . . . merciless; inhumane.' " *Forbes v. Commonwealth,* 27 Va.App. 304, 310, 498 S.E.2d 457, 459 (1998) (citation omitted). The Virginia Supreme Court has acknowledged that "the application of the distinctions between these degrees of negligence is frequently difficult to

apply." *Town of Big Stone Gap v. Johnson,* 184 Va. 375, 379, 35 S.E.2d 71, 73 (1945).

"Anyone who falls asleep while operating an automobile on a public road is guilty of a degree of negligence exceeding lack of ordinary care," and such behavior may be "sufficient to find the operator guilty of the offense of reckless driving." *Kennedy v. Commonwealth,* 1 Va.App. 469, 473, 339 S.E.2d 905, 907–08 (1986). However, such evidence, standing alone, will not necessarily support the finding of criminal negligence required for an involuntary manslaughter conviction. *See King,* 217 Va. at 605–06, 231 S.E.2d at 316 (citing *Richardson v. Commonwealth,* 192 Va. 55, 63 S.E.2d 731 (1951)). A conviction for reckless driving requires proof of driving "on a highway recklessly or at a speed or in a manner so as to endanger the life, limb, or property of any person." Code § 46.2–852. Violation of this statute "is insufficient to bring the negligent act within the common law definition of manslaughter unless it is so flagrant, culpable, and wanton as to show utter disregard of the safety of others under circumstances likely to cause injury." *King,* 217 Va. at 605–06, 231 S.E.2d at 316; *see also Mayo v. Commonwealth,* 218 Va. 644, 648, 238 S.E.2d 831, 833 (1977); *Darnell v. Commonwealth,* 6 Va.App. 485, 489–92, 370 S.E.2d 717, 719–21 (1988) (applying *King* rationale to violation of statute prohibiting reckless handling of firearm and rejecting argument that such reckless handling equates to recklessness required to prove criminal negligence element of involuntary manslaughter). Acts which constitute reckless driving do not necessarily equate to acts of recklessness which constitute criminal negligence necessary to support a conviction for involuntary manslaughter.

Although we have not yet had occasion to consider an involuntary manslaughter case identical to appellant's, our holding in *Hargrove v. Commonwealth,* 10 Va.App. 618, 394 S.E.2d 729 (1990), is instructive. *Hargrove* involved a tired driver who dozed off while returning home after working the midnight–to–8:00–a.m. shift, striking and killing a pedestrian. *See id.* at 620, 394 S.E.2d at 730–31. In reversing Hargrove's

involuntary manslaughter conviction, we noted that the driver knew he was tired before he began his trip home, but no evidence proved that he previously had dozed off during the trip before the accident, and the record was "devoid of evidence as to the distance or time it would have required Hargrove to drive from work to home." *Id.* at 622, 394 S.E.2d at 732. As a result, we said, "[w]e do not know ... that Hargrove should have known that it was not improbable that he would fall asleep during his travel from the workplace to home." *Id.* We noted that some factor other than Hargrove's previously having pulled over or fallen asleep during the same trip could have supported a finding that he acted in reckless disregard for human life as required to support a conviction for involuntary manslaughter,[2] but the record in *Hargrove* contained no such evidence. Ultimately, we held as follows:

> The evidence does not exclude the reasonable hypothesis that, although Hargrove had worked all night, he had not fallen asleep, had not previously dozed during the trip before the accident, and, although tired and in need of sleep and having only a short distance or a trip of a few minutes to reach his home, he could reasonably have believed that he could negotiate his vehicle a short distance without endangering human life.

*Id.*

We intimated in *Hargrove* that a driver's "[having] previously dozed during the trip before the accident" might be sufficient to put a driver on notice that it was not improbable that he would fall asleep again, causing injury to another, before reaching his destination. *Id.* However, we did not purport to hold in *Hargrove* that such circumstances mandated the conclusion that the driver committed involuntary manslaughter. Even if we had attempted such a holding in *Hargrove*, it would have been dicta, for no evidence indicated that Hargrove, in

---

2. We observed that "operating [one's] vehicle for a number of hours in a tired and sleepy condition" or undertaking a trip of "substantial distance or time" while in such a state might support such a conviction, but no evidence in the record proved that Hargrove did either of these things. *Hargrove,* 10 Va.App. at 621–22, 394 S.E.2d at 731.

fact, had previously fallen asleep during his travel from work to home. It indicated only that Hargrove knew he was sleepy before leaving for home, which we found insufficient to prove the criminal negligence necessary to support an involuntary manslaughter conviction.[3]

We are unaware of any Virginia decision requiring a holding that one who previously has fallen asleep while driving and who subsequently, during that same trip, falls asleep causing injury is guilty of involuntary manslaughter as a matter of law. *Cf. Newell,* 197 Va. at 494–96, 90 S.E.2d at 152–54 (holding that whether driver who fell asleep, causing accident, was civilly liable to passenger under statute requiring proof of gross negligence, a lower standard than criminal negligence, was question for fact finder). Therefore, we must determine, *based on all "existing circumstances and conditions,"* whether the evidence supports a finding that appellant "act[ed] consciously in disregard of another person's rights . . . or with reckless indifference to the consequences" and with an actual or constructive awareness "that his conduct probably would cause injury to another." *Tubman,* 3 Va.App. at 271, 348 S.E.2d at 873 (emphasis added); *see Keech,* 9 Va.App. at 279, 386 S.E.2d at 817.

Here, unlike in *Hargrove,* the record contains detailed information regarding the distance appellant attempted to drive after becoming sleepy. Appellant reported to Officer Smith that when he exited Interstate 64 onto Gaskins Road, only about five minutes or four-and-one-half miles from his home, "he got really tired and felt himself going to sleep." On one

---

**3.** In *Hargrove,* we discussed our holding in *Kennedy,* 1 Va.App. 469, 339 S.E.2d 905, in which we affirmed a conviction for reckless driving upon evidence establishing that Kennedy knew he was tired and subsequently fell asleep at the wheel, running off the road. *See Hargrove,* 10 Va.App. at 621, 394 S.E.2d at 731. However, no death resulted from Kennedy's reckless driving, and we had no occasion to consider whether Kennedy's acts amounted to criminal negligence. *See King,* 217 Va. at 605–06, 231 S.E.2d at 316 (holding that reckless driving conviction does not require proof of criminal negligence). Therefore, the discussion of *Kennedy* in *Hargrove* is dicta and does not control the outcome of this case.

occasion, "he ran off the road ... after dozing off for [only] a half second." Subsequently, he "caught himself drifting four or five times," but he was able to "catch himself and ... snap out of it" on each occasion. Thereafter, for at least two-tenths of a mile before leaving the road and striking the jogger, appellant maintained the speed limit and engaged in no weaving or other erratic driving.

Appellant testified that he was not sleepy before he left his friend's home. Although the trial court was entitled to reject appellant's testimony as incredible and to conclude that appellant was lying, *see Speight v. Commonwealth*, 4 Va.App. 83, 88, 354 S.E.2d 95, 98 (1987) (*en banc*), this rejection did not provide affirmative evidence that appellant was, in fact, sleepy before he left his friend's home. Therefore, the evidence, viewed in the light most favorable to the Commonwealth, did not exclude the reasonable hypothesis that appellant became sleepy, as he told Officer Smith, only after leaving Interstate 64, when he was only five minutes from home. In addition, the evidence established that after realizing he had dozed off for "a half second" and run off the road, appellant was able on four or five subsequent occasions to catch himself as the car began to drift and to keep it from running off the road again. Finally, for two-tenths of a mile before the accident, appellant drove without apparent difficulty, maintaining a proper speed and driving within the lines. Under these circumstances, we cannot conclude that appellant knew or should have known that his conduct in proceeding the short distance to his nearby home "probably would cause injury to another" or that he acted mercilessly or inhumanely in failing to stop. That his conduct did, in fact, result in death is tragic and may constitute ordinary or even gross negligence, but it does not, without more, support a finding of criminal negligence.

For these reasons, we reverse appellant's conviction.

*Reversed.*