COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Agee and Senior Judge Coleman
Argued at Salem, Virginia


STEVIE JOE YATES

MEMORANDUM OPINION[*] BY
v.    Record No. 1171-00-3        JUDGE SAM W. COLEMAN, III
                                         JUNE 19, 2001
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
Keary R. Williams, Judge

Terrence Shea Cook (Bolling, Hearl, Cook, on
brief), for appellant.

Amy L. Marshall, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


The sole question presented in this appeal is whether the evidence is sufficient to support Stevie Joe Yates's conviction for involuntary manslaughter.  Finding that the evidence is insufficient, we reverse Yates's conviction and dismiss the indictment.

## I.  Facts

Yates and his sons participated in a camping trip with the Boy Scouts at Breaks Interstate Park, a location 31.4 miles from their home in Buchanan County.  After arriving at the campsite, Yates and his sons pitched their tents and participated in

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

organized events before going to bed around 11:00 p.m.  The next morning, they awoke around 7:00 a.m., ate breakfast, and participated in more organized activities before packing their vehicle and driving home around 11:30 a.m.  Yates drove west on US 460, which is a curvy, steep mountain route.  After driving thirteen miles toward home from the campsite, Yates's vehicle crossed the double solid line and struck a vehicle driven by Donald Jones.  This collision spun Yate's vehicle around so it hit Matthew Keene's truck, pushing it off the highway.  Keene died as a result of the injuries sustained in this accident.

While at the hospital being treated for injuries, Yates told Trooper P.A. Skeens that he did not know what caused the accident and that he did not "remember anything about the accident."  Yates told the trooper that he had not gotten much sleep lately and "was sleepy, but not that sleepy."  Trooper Skeens testified that no evidence indicated that Yates had been speeding, or that he had been under the influence of alcohol or drugs.  At trial, Yates acknowledged that he could have fallen asleep but testified "I don't remember being real sleepy."  No evidence was introduced that he had nodded off or fallen asleep or driven off the road prior to the accident.  On the day of the accident, the weather was sunny, and the roads were dry.

In addition to evidence about how the collision occurred, the Commonwealth presented evidence that at the campsite Lawrence Blankenship's vehicle had been parked next to Yates's vehicle.

-

Prior to camping, Blankenship's vehicle was free from damage or scratches. The day when Blankenship prepared to leave the campsite, approximately four hours after Yates left, Blankenship noticed a scratch on his vehicle's fiberglass bumper. No one saw how the damage was caused. Hundreds of children and about fifty adults, all with camping gear, attended the camp-out and parked in the same area with the Yates and Blankenship vehicles. About a month after the accident, Blankenship was involved in an argument with Yates regarding how Yates was coaching Blankenship's son on a basketball team. During the argument, Blankenship threatened to "whip" Yates. At trial, according to Blankenship, Yates then said either "he was sorry about the scratch on [Blankenship's] vehicle," or "sorry about scratching [Blankenship's] truck." When the defense asked Blankenship about the apparent inconsistency, Blankenship testified that Yates made both statements.

At trial, Yates denied scratching Blankenship's vehicle and denied later making the statement to Blankenship.

## II. Analysis

When considering the sufficiency of the evidence on appeal in a criminal case, "'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted). "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact

-

finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

"[I]nvoluntary manslaughter in the operation of a motor vehicle [is defined] as an 'accidental killing which, although unintended, is the proximate result of negligence so gross, wanton, and culpable as to show a reckless disregard of human life.'" Conrad v. Commonwealth, 31 Va. App. 113, 120, 521 S.E.2d 321, 325 (1999) (citation omitted). To sustain an involuntary manslaughter conviction, criminal negligence must be proved. Criminal negligence results when a person "'act[s] consciously in disregard of another person's rights or . . . with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another.'" Tubman v. Commonwealth, 3 Va. App. 267, 271, 348 S.E.2d 871, 873 (1986) (quoting Griffin v. Shively, 227 Va. 317, 321, 315 S.E.2d 210, 213 (1984)). Criminal negligence may be found to exist where the offender either knew or should have known the probable results of his acts. See Keech v. Commonwealth, 9 Va. App. 272, 279, 386 S.E.2d 813, 817 (1989).

"'The law recognizes three degrees of negligence, (1) ordinary and simple, (2) gross, and (3) willful, wanton, and reckless.'" Tubman, 3 Va. App. at 270, 348 S.E.2d at 873 (quoting Griffin, 227 Va. at 321, 315 S.E.2d at 212). The third

-

type, which forms the basis for criminal negligence, is greater than ordinary or gross negligence. Criminal negligence is "'[m]arked by or manifesting arrogant recklessness of justice, of the rights or feelings of others, . . . merciless; inhumane.'" Forbes v. Commonwealth, 27 Va. App. 304, 310, 498 S.E.2d 457, 459 (1998) (citation omitted).

In Hargrove v. Commonwealth, 10 Va. App. 618, 394 S.E.2d 729 (1990), a tired driver dozed off while driving home after working the midnight to 8:00 a.m. shift, and struck and killed a pedestrian. The evidence was insufficient to support an involuntary manslaughter conviction because the evidence did not exclude the reasonable hypothesis that Hargrove, who had not previously dozed off while driving prior to the accident, could reasonably have believed that he could drive himself home without endangering human life. Id. at 622, 394 S.E.2d at 732. The evidence failed to show that Hargrove's falling asleep while driving showed a willful, wanton, reckless disregard for human life. At most, the evidence showed that Hargrove was negligent.

In contrast, the evidence in Conrad supported an involuntary manslaughter conviction where Conrad had been awake for twenty-two hours without sleep and chose to drive his vehicle after dozing off several times, before he struck and killed a jogger by driving off the road. Conrad, 31 Va. App. at 124, 521 S.E.2d at 327. Even though Conrad dozed off four or five times but "snapped out of it," he continued driving knowing

-

that he had been falling asleep.  We upheld the trial court's holding that Conrad should have known because he had dozed off four or five times, that his driving abilities were affected and, therefore, should have known of the risks to human life that his driving created.  Id.  His decision to continue driving in such a condition constituted "a callous act of indifference to the safety of others."  Id.  We held that the evidence supported a finding of criminal negligence and upheld Conrad's involuntary manslaughter conviction.  Id.

     In the present case, the evidence does not show that Yates had dozed off or was sleepy prior to the fatal accident.  The evidence fails to show that at the time he was driving he exhibited a callous disregard or indifference to the safety of others.  The evidence does not exclude the reasonable hypothesis that, even if Yates did not get much sleep at the camp-out the previous night, Yates reasonably could have believed that he could drive home without endangering human life.  No evidence was presented to prove that Yates knew or should have known prior to the accident that he was so sleepy that he was a danger to others on the highway.

     The Commonwealth apparently relies on the fact that Blankenship's fender was scratched as some evidence tending to prove that Yates was on notice before he left the campsite that he was sleepy and that his ability to operate his vehicle was impaired.  However, that evidence viewed in the light most

-

favorable to the Commonwealth does not tend to prove or support the conclusion that Yates was sleepy and dozing off when he left the campground. First, the evidence is equivocal at best and fails to prove that Yates, rather than someone else at the camp-out, scratched Blankenship's truck fender. The Commonwealth relies on the fact that Yates's vehicle was parked next to Blankenship's vehicle for some of the time at the campground and on Blankenship's inconsistent testimony regarding Yates's statement a month later to prove that Yates caused the damage. However, this vague and inconsistent circumstantial evidence is not sufficiently credible to prove that Yates caused the scratches to Blankenship's truck.

But moreover, even if we accept that Yates's car did scratch Blankenship's fender, that evidence does not prove that Yates was sleepy or that his driving was impaired due to sleep deprivation. The fact that Yates may have scratched Blankenship's truck as he exited the parking lot was irrelevant and proves nothing as to Yates's state of alertness or his being on notice that he was sleepy. Danny Davis, who saw Yates leave the campsite, said Yates appeared to be well rested and did not appear to be tired or in any way impaired. The evidence indicated that Yates had no trouble driving the thirteen miles prior to the accident. The evidence does not prove that Yates knew or should have known that driving home "probably would cause injury to another."

-

Yates's conduct may have constituted ordinary or even gross negligence, but it did not, without more, support a finding of criminal negligence.  Accordingly, the evidence was insufficient to prove the criminal negligence necessary to support an involuntary manslaughter conviction.

For these reasons, we reverse Yates's conviction for involuntary manslaughter and dismiss the indictment.

<u>Reversed and dismissed.</u>