COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Malveaux and Raphael
Argued at Williamsburg, Virginia

JOSEPH MICHAEL CASTIGLIA

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1253-23-1                      JUDGE MARY BENNETT MALVEAUX
                                                    JANUARY 21, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF NORTHAMPTON COUNTY
A. Joseph Canada, Jr., Judge Designate

James O. Broccoletti (Zoby & Broccoletti, P.C., on brief), for
appellant.

David A. Stock, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following a jury trial, the trial court convicted Joseph Michael Castiglia ("appellant") of two

counts of involuntary manslaughter, in violation of Code § 18.2-36.[1] On appeal, appellant argues

that the evidence was insufficient to support his convictions. He asserts that "there was no evidence

that [he] fell asleep or engaged in any other behavior that rises to [the] level of negligence so gross,

wanton, and culpable as to show a reckless disregard of human life." We disagree and affirm the

trial court's judgment.

                                    BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*,

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Appellant was also convicted of reckless driving, passing a stopped school bus, in
violation of Code § 46.2-859. He does not challenge this conviction on appeal.

73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In doing so, we discard any of appellant's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Gerald*, 295 Va. at 473.

On the morning of January 28, 2022, Nayda Ortiz was driving three of her four daughters to school on Route 13, a busy highway, in her blue car. Two of the girls were in the back seats, and the third was in the front passenger seat. Ortiz saw a school bus coming to a stop in the right lane, with lights flashing, so she proceeded to stop in the left lane. Another school bus also stopped in the right lane of the divided highway, "kind of beside" Ortiz. While stopped, Ortiz heard one of her daughters say, "It's going to hit us," and she suddenly felt an impact. Appellant had struck the back of Ortiz's car with his white pickup truck. Ortiz's two daughters in the back seat died as a result of injuries sustained from the collision.

Deon Rogers, one of the bus drivers, testified that at about 7:20 a.m. that morning, he stopped his bus on Route 13 for at least 45 seconds to a minute to pick up school children. At the location of the stop, the highway was straight, and the visibility that day was clear. Rogers's bus was painted yellow with its flashing lights and other safety equipment working that day. The flashing lights were activated while he conducted the stop. While Rogers had his bus stopped, he was able to see a quarter mile of the road behind the school bus from his rear-view mirrors and had an unobstructed view of a white pickup truck approaching the rear of the bus. As Rogers watched the white pickup truck, he became concerned that it was not going to stop before reaching the bus. The white pickup truck was traveling in the left southbound lane the entire time he watched it. Also in the left southbound lane were a black pickup truck and Ortiz's blue car. The black pickup truck was stopped near the rear bumper of his bus, and the blue car was stopped behind it. Appellant, the driver of the white pickup truck, did not change his speed or try to move out of the left-hand lane to

avoid a crash. Rogers saw the white pickup truck crash into the back of Ortiz's blue car. Rogers did not see any "dipping of the front of the pickup or anything that would indicate braking" before appellant hit Ortiz's car.

Harry Gaskins, the other bus driver, testified that he was driving at a rate of 55 to 60 miles per hour on Route 13 prior to stopping his bus behind the one Rogers was driving. Gaskins had all his warning lights activated during this stop. Although Gaskins heard the crash, he did not see the accident.

Coleman James, the driver of the black pickup truck, "easily" saw Rogers's school bus, with its flashing lights, ahead of his vehicle, and stopped behind it. James saw appellant's white pickup truck approaching in the left lane without slowing down from his rear-view mirror.

After the first responders arrived, James recalled appellant asking him "what had happened." When later asked by State Police what had happened to cause the crash, appellant stated that "he saw the school buses starting to come to a stop and that he proceeded to drive and that he was too far out to come to a stop" and also that "he saw a car moving from the right lane to go into the left lane in front of him and he was unable to avoid striking it." Rogers testified that he did not see any cars cut in front of the white pickup truck before it struck the blue car.

Virginia State Trooper Cody Corbin investigated the crash scene and determined that appellant's truck sustained "heavy front-end damage" when it "rode up onto the back" of Ortiz's car. Ortiz's car had severe rear-end damage as well as front-end damage when it was pushed into the black pickup truck. The black pickup truck was damaged in its rear. Gouge and skid marks on the roadway matched appellant's truck.

Virginia State Police Special Agent Aaron Whaley testified as an expert in extraction and analysis of digital information. He extracted data and messages from appellant's phone. Three days prior to the accident, on January 25, 2022, appellant messaged "[n]ot long enough" in response to a

message asking him how he slept the previous night. On January 26, 2022, appellant was asked how he had slept, and he responded "in and out." That same day, appellant also messaged someone that he was "exhausted." At 5:21 a.m. on January 27, 2022, appellant messaged someone that he would meet them at 7:00 a.m. rather than 6:00 a.m. because he had "overslept." Later that morning, he messaged "[m]e too" in response to a message indicating that the sender had not slept "long enough." He also messaged someone that morning that he was "[d]ying" and "[c]old and hungry."

Appellant's phone records further showed that on the night before the crash, he arrived home after 9:00 p.m. and texted continuously for the next three hours. He began messaging again around 6:00 a.m. the morning of the crash.

The jury found appellant guilty of two counts of involuntary manslaughter. This appeal followed.

ANALYSIS

Appellant argues that the evidence was insufficient to support his involuntary manslaughter convictions because it failed to establish the requisite level of negligence.

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Melick v. Commonwealth*, 69 Va. App. 122, 144 (2018) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Burrous v. Commonwealth*, 68

Va. App. 275, 279 (2017)). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)). "A circumstantial fact is admitted on the basis of an inference when the inference is a probable explanation of another fact and a more probable and natural one than other explanations, if any." *Commonwealth v. Barney*, 302 Va. 84, 98 (2023) (quoting *Toler v. Commonwealth*, 188 Va. 774, 780 (1949)).

"Involuntary manslaughter in the operation of a motor vehicle is defined as an 'accidental killing which, although unintended, is the proximate result of negligence so gross, wanton, and culpable as to show a reckless disregard of human life.'" *Cheung v. Commonwealth*, 63 Va. App. 1, 8 (2014) (quoting *King v. Commonwealth*, 217 Va. 601, 607 (1977)). "[A] higher degree of negligence in the operation of a motor vehicle is required to establish criminal liability for involuntary manslaughter than to establish liability in a civil action for ordinary or even gross negligence. This higher degree of negligence has come to be known as 'criminal negligence.'" *Id.* (alteration in original) (quoting *Keech v. Commonwealth*, 9 Va. App. 272, 277 (1989)). Criminal negligence is "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Id.* at 8-9 (emphasis omitted) (quoting *Conrad v. Commonwealth*, 31 Va. App. 113, 122 (1999) (en banc)). This form of negligence must be "more than mere inadvertence or misadventure. It is a recklessness or indifference incompatible with a proper regard for human life." *Banks v. Commonwealth*, 41 Va. App. 539, 546 (2003) (quoting *Bell v. Commonwealth*, 170 Va. 597, 611 (1938)). But "[t]he cumulative effect of a series of connected, or independent negligent acts causing a death may be considered in determining if a defendant has exhibited a reckless disregard for human life."

*Cheung*, 63 Va. App. at 9 (alteration in original) (quoting *Stover v. Commonwealth*, 31 Va. App. 225, 231 (1999)).

"An important distinction between involuntary manslaughter and lesser offenses 'is the likelihood of injury to other users of the highways.'" *Hargrove v. Commonwealth*, 10 Va. App. 618, 620 (1990) (quoting *Mayo v. Commonwealth*, 218 Va. 644, 648 (1977)). "In determining the degree of negligence sufficient to support a conviction of vehicular involuntary manslaughter, the accused's conscious awareness of the risk of injury created by his conduct is necessarily a significant factor." *Keech*, 9 Va. App. at 278. "Obviously, when the driver proceeds in the face of a known risk, the degree of the negligence is increased, and may turn that which would have been ordinary negligence into gross, willful or wanton negligence." *Id.* "Criminal negligence as the basis for involuntary manslaughter is judged under an objective standard and, therefore, may be found to exist where the offender either knew *or should have known* the probable results of his acts." *Cheung*, 63 Va. App. at 9-10 (quoting *Conrad*, 31 Va. App. at 121-22).

Here, the evidence sufficed for the jury to find that appellant knew, or should have known from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another. Text messages from appellant's phone showed that he had not been sleeping well for at least three days prior to the accident. Despite his poor sleep, he proceeded to drive his pickup truck the morning of the accident and did so in an inattentive manner. For at least a quarter of a mile on Route 13, appellant approached Rogers's stopped school bus, with its flashing lights on, without changing his speed or trying to move out of the left-hand lane to avoid a crash. Following this prolonged period of inattentiveness, appellant crashed his pickup into the back of Ortiz's car. Appellant did not attempt to stop his vehicle prior to crashing into the car. After the accident, appellant asked another driver what had happened, indicating that his state of mind while driving was so unclear that he was not even aware he had caused an accident. The jury reasonably

concluded that, by driving when sleep deprived and in an inattentive manner, appellant's conduct "constitute[d] a great departure from that of a reasonable person (gross, wanton or willful conduct) which create[d] a great risk of injury," and under an objective standard, he "should have realized the risk created by his conduct." *Keech*, 9 Va. App. at 280; *see also Rich v. Commonwealth*, 292 Va. 791, 803 (2016) (considering a driver's "admitted inattentiveness while driving" and "voluntary decision to drive while sleep-deprived," among other factors, in concluding that the driver's actions rose to the requisite level of criminal negligence necessary to support the driver's DUI maiming conviction).

In arguing that his actions did not constitute criminal negligence, however, appellant urges us to look at factors absent in the instant case. He notes that he "was not drinking, he was not using drugs, he was not texting, nor was there evidence of any other kind of dangerous driving behavior." He also asks us to look solely at the evidence that he was sleep deprived, or possibly asleep while driving, in isolation, arguing that it alone was insufficient to establish criminal negligence.[2] But

---

[2] Appellant also argues that *Hargrove* supports his position that the facts here did not establish that he acted with criminal negligence. In *Hargrove*, appellant fell asleep while driving and struck and killed a pedestrian walking across the street. 10 Va. App. at 619. Appellant had worked a night shift from 12:00 a.m. to 8:00 a.m. the previous night and was "extremely tired" at the time of the accident. *Id.* at 620. He had only worked the night shift once. *Id.* This Court held that Hargrove's act of falling asleep while driving did not constitute criminal negligence under the circumstances of that case, because "the evidence d[id] not show that Hargrove should have known that from his conduct 'a homicide was not improbable under all of the facts existing at the time, and that the knowledge of such facts should have had an influence on [his] conduct.'" *Id.* at 622 (second alteration in original) (quoting *Tubman v. Commonwealth*, 3 Va. App. 267, 274 (1986)). We find *Hargrove* distinguishable from the instant case. Here, appellant was sleep deprived for three days prior to the accident, rather than a single night. Thus, appellant here had extended time to appreciate the gravity of the consequences that might ensue if he chose to drive in such a state. In addition, appellant's state of mind during and after the accident was so unclear that he had to ask James "what had happened." And appellant's driving stands in stark contrast to that in *Hargrove*. The record reflects that appellant drove in an inattentive manner for a quarter of a mile on a busy highway. Appellant's lack of sleep over a three-day period, and his inattentive driving, provide additional evidence not present in *Hargrove* demonstrating that he knew or should have known that his conduct would likely cause injury to other users of the highway.

viewing circumstances absent here, or certain pieces of evidence in isolation, is not the standard of review we apply in determining whether the Commonwealth's evidence was sufficient to support appellant's conviction. "In applying th[e] standard of review [for sufficiency-of-the-evidence challenges], we eschew the divide-and-conquer approach, which examines each incriminating fact in isolation, finds it singularly insufficient, and then concludes that the sum of these facts can never be sufficient." *Barney*, 302 Va. at 97. "Instead, in an appellate sufficiency review, the evidence is 'considered as a whole.'" *Id.* (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)). "[W]hile no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (second alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). Viewed properly, in the light most favorable to the Commonwealth, the evidence sufficed to show that appellant drove his vehicle while sleep deprived and in a sustained inattentive manner and that he knew or should have known the risks his behavior posed to others. Thus, on appeal, we cannot say that the jury was plainly wrong in finding that appellant acted with recklessness or indifference incompatible with a proper regard for human life, supporting his convictions for two counts of involuntary manslaughter.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*