**Richmond**

GREGORY S. TUBMAN

v.

COMMONWEALTH OF VIRGINIA

No. 0134-84

Decided October 7, 1986

COUNSEL

V. James Ventura (Ackerman & Ventura, on brief), for appellant.

Eugene Murphy, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

COLE, J. — In a bench trial, the appellant, Gregory Scott Tubman, was convicted of involuntary manslaughter arising out of a traffic accident. On appeal, Tubman contends that the evidence was insufficient to support the conviction. We agree and reverse.

On May 19, 1984, at approximately 3:00 p.m., an accident occurred on State Route 3 in Spotsylvania County, just west of Fredericksburg, between a motor vehicle driven by Tubman and a motorcycle operated by the decedent, Gregory A. Durrette.

Both the appellant and the Commonwealth agree that there is no substantial factual dispute in the evidence. Route 3 is a four-lane highway, with two eastbound lanes and two westbound lanes, which are separated by a twenty-five foot median strip. At the scene, to the north of the highway is a High's store with a parking lot; and to the south of Route 3 is the entrance into Kilarney Drive, which leads to a residential area. At the intersection is a crossover through the median strip. It was a dry and sunny day. There were no defects in the roadway or in either vehicle involved in the accident.

According to all of the testimony, Tubman exited the High's store parking lot, driving a 1979 Oldsmobile owned by Rick James Russell, a passenger in the vehicle. He intended to go directly across Route 3, through the crossover, and to enter Kilarney Drive on the opposite side of the highway. Tubman approached Route 3 at a slow rate of speed. The view to his left was unobstructed. Observing no traffic coming from that direction, he did not come to a complete stop at the highway, but proceeded to cross the two westbound lanes. While traversing these two lanes, Tubman looked to his right in the direction of eastbound traffic. He saw a car and a truck at some distance from the intersection. The view to his right was obstructed by shrubbery or a hedge row planted in the median strip. The hedge commenced three or four car lengths from the crossover and extended an unspecified distance before ending. Tubman first saw the car and truck beyond the hedge. As these vehicles passed behind the hedge, he could only see the top of the vehicles.

As Tubman proceeded across the westbound lanes, he decelerated the speed of his vehicle and proceeded into the crossover at

the median strip. The evidence placed his speed from seven to fifteen miles per hour, depending upon whether he was slowing down or accelerating his speed. When Tubman was in the median strip, the front car passed the crossover and he then determined that he had ample time to proceed in front of the truck. He accelerated the speed of his vehicle to cross the eastbound lanes. However, he failed to see the motorcycle operated by Durrette in the left lane of the eastbound lanes. Tubman testified that he never saw the motorcycle until immediately before the impact. Durrette, at the last second, pulled to his right to avoid the collision, but struck the motor vehicle on the right side near the rear of the front fender. He died as a result of injuries sustained in the collision.

Pamela Brown was a passenger in the truck travelling east on Route 3. She estimated her vehicle to be about seven car lengths behind the motorcycle, and the speed of the motorcycle to be about forty-five to fifty miles per hour. According to her testimony, she observed Tubman's vehicle at the crossover, saw it hesitate slightly in the median strip, and then pull into the eastbound lane in front of the motorcycle. Tubman admits, and all the evidence affirms, that Tubman did not come to a complete stop before entering either the westbound or eastbound lanes of Route 3. Tubman testified that he had ample time to pass in front of the truck and, because of his mistaken belief that the approaching truck was the only vehicle in the eastbound lanes, he proceeded without coming to a complete stop. He concedes that if he had stopped before entering the eastbound lanes, his view to his right would not have been obstructed by the hedge.

■ The Supreme Court has concluded that involuntary manslaughter in the operation of a motor vehicle in the Commonwealth "should be predicated solely upon criminal negligence proximately causing death." *King v. Commonwealth*, 217 Va. 601, 607, 231 S.E.2d 312, 316 (1977). It has defined involuntary manslaughter in the operation of a motor vehicle as "the accidental killing which, although unintentional, is the proximate result of negligence so gross, wanton, and culpable as to show a reckless disregard of human life." *Id.*

■ Recently, the various degrees of negligence have been defined by the Supreme Court. "The law recognizes three degrees of negligence, (1) ordinary or simple, (2) gross, and (3) willful, wanton, and reckless." *Griffin v. Shively*, 227 Va. 317, 321, 315

S.E.2d 210, 212 (1984). Ordinary or simple negligence is failure to use "that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury to another." *Id.* at 321, 315 S.E.2d at 212-13; *Perlin v. Chappell*, 198 Va. 861, 864, 96 S.E.2d 805, 808 (1957) (quoting *Montgomery Ward & Co. v. Young*, 195 Va. 671, 673, 79 S.E.2d 858, 859 (1954)).

■ Gross negligence is defined as follows: "[T]hat degree of negligence which shows indifference to others as constitutes an utter disregard of prudence amounting to a complete neglect of the safety of [another]. It must be such a degree of negligence as would shock fair minded men although something less than willful recklessness." *Griffin*, 227 Va. at 321, 315 S.E.2d at 213 (quoting *Ferguson v. Ferguson*, 212 Va. 86, 92, 181 S.E.2d 648, 653 (1971)); *see Hayman v. Brizendeni*, 210 Va. 578, 581, 172 S.E.2d 774, 777 (1970).

■ "Willful and wanton negligence is acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Griffin*, 227 Va. at 321, 315 S.E.2d at 213; *Friedman v. Jordan*, 166 Va. 65, 68, 184 S.E. 186, 187 (1935). "Willful or wanton negligence involves a greater degree of negligence than gross negligence, particularly in the sense that in the former an actual or constructive consciousness of the danger involved is an essential ingredient of the act or omission." *Griffin*, 227 Va. at 321-22 (quoting *Boward v. Leftwick*, 197 Va. 227, 231, 89 S.E.2d 32, 35 (1955)).

The Supreme Court has upheld involuntary manslaughter convictions in *Albert v. Commonwealth*, 181 Va. 894, 27 S.E.2d 177 (1943) (defendant was drunk, drove his truck upon a bridge, ran over the decedent in daylight when there was ample room for the truck to pass in safety); *Zirkle v. Commonwealth*, 189 Va. 862, 55 S.E.2d 24 (1949) (defendant, under the influence of intoxicants, zigzagged or swayed across the center of the road to the wrong side of the road); *Richardson v. Commonwealth*, 192 Va. 55, 63 S.E.2d 731 (1951) (defendant, driving a tractor-trailer unit, attempted to pass another similar unit, drove onto the far left-hand shoulder of the highway and struck a pedestrian, walking with his back to the defendant); *Fadely v. Commonwealth*,

208 Va. 198, 156 S.E.2d 773 (1967) (defendant was drinking, rounding curve at excessive speed, lost control and ran off the highway); *Beck v. Commonwealth*, 216 Va. 1, 216 S.E.2d 8 (1975) (defendant driving under influence of intoxicants, failed to see three men on his left and four on his right, and left the scene of the accident); *Delawder v. Commonwealth*, 214 Va. 55, 196 S.E.2d 913 (1973) (defendant racing at eighty to one hundred miles per hour); *Mayo v. Commonwealth*, 218 Va. 644, 238 S.E.2d 831 (1977) (defendant, within one city block and starting from a stop, attained a speed of twice the posted limit, and continued to accelerate until the accident).

Convictions of involuntary manslaughter have been reversed by the Supreme Court in the following instances: *Jenkins v. Commonwealth*, 220 Va. 104, 255 S.E.2d 504 (1979) (defendant driving southbound down the middle of an unmarked road with lights on low beam, saw a pedestrian in northbound lane ahead and applied brakes but hit the victim); *King v. Commonwealth*, 217 Va. 601, 231 S.E.2d 312 (1977) (inadvertent failure to turn on white headlights, rather than amber running lights in violation of statute); *Lewis v. Commonwealth*, 211 Va. 684, 179 S.E.2d 506 (1971) (defendant, who ran over a pedestrian at an intersection, failed to keep a proper lookout, but no evidence of speeding, drinking or recklessness).

When Tubman undertook to traverse Route 3, the law imposed certain duties upon him. He had the common law duties to keep a proper lookout and to keep his vehicle under proper control. Since he entered a public highway from a private road or driveway, he had a duty to stop immediately before entering such highway and, upon entering such highway to yield the right-of-way to all vehicles approaching on such public highway. Code § 46.1-223. This section must be given a reasonable construction and the operator entering the highway from the private road "is only required to yield the right of way to those lawfully approaching so near the intersection that he cannot safely enter it." *Irvan v. Jamison Oil Co.*, 205 Va. 1, 6, 135 S.E.2d 153, 156 (1964) (quoting *Temple v. Ellington*, 177 Va. 134, 142, 12 S.E.2d 826, 829 (1941)).

Although Route 3 has two eastbound lanes and two westbound lanes separated by a median strip, these roadways constitute only one intersection. Where a highway includes two roadways thirty feet or more apart, then every crossing of each roadway of such

divided highway by an intersecting highway shall be regarded as a separate intersection. Code § 46.1-1(11)(b). Since the evidence does not establish that the median strip was thirty feet or more in width, there is only one intersection. The implication of this is that Tubman was not required by the statute to stop in the median strip. However, his common law duty to exercise reasonable care in the operation of his motor vehicle may require that he do so.

We have no doubt that Tubman was guilty of negligence in failing to keep a proper lookout, in failing to exercise reasonable care in the operation of his motor vehicle in traversing the intersection and in failing to stop at the highway and yield the right of way to approaching traffic. The issue, however, is whether the cumulative effect of his conduct constitutes "negligence so gross, wanton, and culpable as to show a reckless disregard of human life."

> On appeal of a conviction, we must not only view the evidence in the light most favorable to the Commonwealth, but we must accord to the evidence all reasonable inferences fairly deducible therefrom. In addition, the judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict; it will not be disturbed on appeal unless plainly wrong or without evidence to support it.

*Gooden v. Commonwealth*, 226 Va. 565, 571-72, 311 S.E.2d 780, 784 (1984) (citations omitted).

> But the application of the distinctions between these degrees of negligence is frequently difficult to apply and we have not hesitated to set aside verdicts predicated upon a finding of the higher degree of negligence where a review of the evidence convinced us that the minds of reasonable men could not differ as to the conclusion that such higher degree had not been shown.

*Town of Big Stone Gap v. Johnson*, 184 Va. 375, 379, 35 S.E.2d 71, 73 (1945).

"Generally, negligence (whether ordinary, gross, or willful and wanton), contributory negligence, and proximate cause are issues for a jury's resolution. They only become questions of law to be determined by a court, when reasonable minds could not differ."

*Griffin*, 227 Va. at 320, 315 S.E.2d at 212 (citations omitted).

■ To constitute involuntary manslaughter, the negligence must be criminal and not ordinary civil negligence. "Inadvertent acts of negligence without recklessness, while giving rise to civil liability, will not suffice to impose criminal responsibility." *King*, 217 Va. at 606, 231 S.E.2d at 316.

> The courts and the authorities agree, in the absence of statutory regulations, that a higher degree of negligence is required to establish criminal negligence than to establish liability in a civil action . . . . It is a recklessness or indifference incompatible with a proper regard for human life. It must be shown that a homicide was not improbable under all of the facts existing at the time, and that the knowledge of such facts should have had an influence on the conduct of the offender.

*Bell v. Commonwealth*, 170 Va. 597, 611, 195 S.E. 675, 681 (1938).

The terms "gross," "wanton," and "culpable" have been defined by the Supreme Court in the following manner.

> The terms 'gross negligence' and 'wanton negligence' have frequently been considered and applied by us. 'Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence . . . [i]t is very great negligence, or the absence of slight diligence, or the want of even scant care. . . [i]t is a heedless and palpable violation of legal duty respecting the rights of others. The element of culpability which characterizes all negligence is, in gross negligence, magnified to a high degree as compared with that present in ordinary negligence . . . . 'Wanton negligence' is of even a higher degree than 'gross negligence.' Webster's New International Dictionary, 2d ed., defines 'wanton' as '[m]arked by or manifesting arrogant recklessness of justice, of the rights or feelings of others . . . ; merciless; inhumane.'

*Town of Big Stone Gap*, 184 Va. at 378-79, 35 S.E.2d at 73 (citations omitted).

■ Applying the definition of involuntary manslaughter contained in *King*, we find that Tubman's negligence is not so gross, wanton, and culpable as to show reckless disregard of human life. We do not find that Tubman acted "consciously in disregard of another person's rights," nor do we find that he was driving with reckless indifference to the consequences of his actions. We find that Tubman did not act and was not driving in such a manner that he would be aware, from his knowledge of the existing circumstances and conditions, that his conduct probably would cause injury to another. "The difference between the terms 'recklessly' and 'negligently' . . . is one of kind, rather than of degree. Each actor creates a risk of harm. The reckless actor is *aware* of the risk and disregards it; the negligent actor is not aware of the risk but should have been aware of it." 2 C. Torcia, *Wharton's Criminal Law* § 168 (14th ed. 1979). Tubman falls within the latter category and was a "negligent" actor. His negligence in not coming to a complete stop before entering Route 3 and his failure to see the motorcycle, which was admittedly partially obstructed by the hedge, does not amount to wanton negligence so culpable as to show a reckless disregard of human life.

For the reasons stated, the involuntary manslaughter conviction is reversed.

*Reversed.*

Barrow, J., and Moon, J., concurred.