COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Senior Judge Cole
Argued at Richmond, Virginia


JAMES LEROY FORBES
                                           OPINION BY
v.      Record No. 0113-97-2       JUDGE MARVIN F. COLE
                                           MAY 5, 1998
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF HANOVER COUNTY
                Richard H. C. Taylor, Judge

        Brenda L. Page (Tracey Randall Dunlap; Page &
        Associates, on brief), for appellant.

        Michael T. Judge, Assistant Attorney General
        (Richard Cullen, Attorney General, on brief),
        for appellee.


     James Leroy Forbes was convicted in a bench trial of

involuntary manslaughter arising out of a traffic accident.  On

appeal, he contends the evidence was insufficient to support the

conviction and that his sentence was excessive and improper

because it was based on stale and unsubstantiated prior

convictions.  We agree that the evidence was insufficient to

support the conviction and reverse.  Because we reverse the

conviction on the sufficiency issue, we need not decide the other

issue.

                            FACTS

     The evidence is essentially undisputed.  On March 24, 1996,

at about 4:00 a.m., the victim's car was stopped at a stop sign

located at the end of an exit ramp off Interstate 95 near

Ashland, Virginia.  Forbes drove his car into the rear of the

victim's car, killing the victim.  At the scene of the accident, and shortly after the accident occurred, Forbes asked Deputy Wickham "where he was, what had happened and why he was there." On the way to the hospital, Forbes told Wickham that he was diabetic and that he possibly could have "blacked out."  Forbes also said he had experienced black-outs before.  A blood alcohol test performed at the hospital after the accident showed no alcohol in Forbes' blood.  No evidence was presented to prove Forbes' blood sugar level after the accident.

While in the hospital, Forbes told Deputy Smith that he had experienced diabetic black-outs on two or three other occasions--one in 1995 and one or two in 1994.  Forbes said he had experienced no black-outs in 1996 until the accident on March 24, 1996.  Forbes also told Smith that he had never experienced a black-out while driving.

Forbes has been a diabetic for "thirty-some" years.  At trial, Forbes testified that, on the morning of March 23, 1996, he awoke, took his insulin, and ate breakfast.  He checked his blood sugar level at about 5:00 p.m. and found that it was "okay."  He then took his insulin, ate supper, and drove from his residence in eastern Richmond to a friend's house on the south side of Richmond.

Forbes testified that, at about 11:00 or 11:30 p.m., he ate several chicken wings and drank a seven-ounce beer.  He fell asleep until about 2:30 a.m., and, when he awoke, he felt "a

little woozy."  Forbes testified that he ate "a couple of mints," drank a glass of orange juice, and sat down for about fifteen minutes.  Forbes stated that he then felt "fine" and entered his car to drive home.  As he warmed up his car, his friend, Mozelle Carter, brought him two more mints, which he ate.  Forbes again told Carter that he felt "fine," and he started driving toward his home.

Forbes recalled driving on Jefferson Davis Highway, crossing the James River on the Lee Bridge, and seeing the Second Street exit.  He did not recall anything else until after the accident.

Carter testified that she awoke Forbes at about 1:45 a.m. on March 24, 1996 and that Forbes said he felt "a little woozy" when he awoke.  She gave Forbes two mints, and he walked to his car. Carter asked Forbes how he was feeling, and he said, "I'm fine, I'm fine."  He then requested several more mints.  Carter testified that Forbes ate the mints, and she gave him two more mints.  Forbes again told Carter he felt fine, and he drove away.  Carter stated that Forbes "was driving fine" as he drove away from her house.

Dr. Randolph Palmore, Forbes' physician since January 1994, testified that he never instructed Forbes not to drive or advised Forbes that it would be hazardous to drive.  Dr. Palmore also stated that he had no record that Forbes told him he had suffered black-outs.  He did not know whether Forbes had "any diabetic reactions."

Forbes' last visit with Dr. Palmore prior to the accident was on February 21, 1996. At that visit, Dr. Palmore said Forbes' "sugar was stable, and there were no changes made in his insulin." Dr. Palmore saw Forbes again on March 29, 1996, five days after the accident, and adjusted his insulin at that visit.

Dr. John Nestler treated Forbes on March 25, 1996, when Forbes was in the hospital after the accident. Dr. Nestler said Forbes told him he knew he was having a low blood sugar reaction on March 24, 1996 because he felt "confused" and woozy prior to driving his car. However, Forbes said he felt better after resting and eating mints. Dr. Nestler also testified that most diabetics go through two "stages" when they develop a low blood sugar attack. In the first stage, they release adrenalin, get nervous, have heart palpitations, shakiness and headaches. In the second stage, the patient experiences confusion. Dr. Nestler said that, based on his interview with Forbes concerning his low blood sugar attacks, he "clearly doesn't have that first phase. So he doesn't have those warning signs that most diabetic patients have. He goes straight into confusion, and that's something that's termed hypoglycemia unawareness."

Dr. Nestler also testified that he usually advises his patients to consume mints or drink one-half of a glass of orange juice, wait one-half hour, and check their blood sugar when they experience a low blood sugar episode.

ANALYSIS

"To constitute involuntary manslaughter, the negligence [involved] must be criminal and not ordinary civil negligence. 'Inadvertent acts of negligence without recklessness, while giving rise to civil liability, will not suffice to impose criminal responsibility.'" Tubman v. Commonwealth, 3 Va. App. 267, 274, 348 S.E.2d 871, 875 (1986) (quoting King v. Commonwealth, 217 Va. 601, 606, 231 S.E.2d 312, 316 (1977)). In King, the Supreme Court defined involuntary manslaughter in the operation of a motor vehicle as "the accidental killing which, although unintended, is the proximate result of negligence so gross, wanton, and culpable as to show a reckless disregard of human life." King, 217 Va. at 607, 231 S.E.2d at 316.

"'Generally, negligence (whether ordinary, gross, or willful and wanton), contributory negligence, and proximate cause are issues for a jury's resolution. They only become questions of law to be determined by a court, when reasonable minds could not differ.'" Tubman, 3 Va. App. at 273-74, 348 S.E.2d at 875 (citation omitted).

> [T]he application of the distinctions between these degrees of negligence is frequently difficult to apply and we have not hesitated to set aside verdicts predicated upon a finding of the higher degree of negligence where a review of the evidence convinced us that the minds of reasonable men could not differ as to the conclusion that such higher degree had not been shown.

Town of Big Stone Gap v. Johnson, 184 Va. 375, 379, 35 S.E.2d 71, 73 (1945).

The terms "gross negligence" and "wanton negligence" have been defined by the Supreme Court.

> "Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence. . . . It is very great negligence, or the absence of slight diligence, or the want of even scant care. . . . It is a heedless and palpable violation of legal duty respecting the rights of others. The element of culpability which characterizes all negligence is, in gross negligence, magnified to a high degree as compared with that present in ordinary negligence."

Id. at 378-79, 35 S.E.2d at 73 (citation omitted). "'[G]ross negligence is that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another.'" Id. at 379, 35 S.E.2d at 73 (citation omitted).

"'Wanton negligence' is of even a higher degree than 'gross negligence.' Webster's New International Dictionary, 2d Ed., defines 'wanton' as '[m]arked by or manifesting arrogant recklessness of justice, of the rights or feelings of others, . . . merciless; inhumane.'" Id. (citation omitted).

In Keech v. Commonwealth, 9 Va. App. 272, 386 S.E.2d 813 (1989), this Court stated:

> In determining the degree of negligence sufficient to support a conviction of vehicular involuntary manslaughter, the accused's conscious awareness of the risk of injury created by his conduct is necessarily a significant factor. Obviously, when the driver proceeds in the face of a known risk, the degree of the negligence is increased, and may turn that which would have been ordinary negligence into gross, willful or wanton negligence.

<u>Id.</u> at 278, 386 S.E.2d at 816.

In <u>Keech</u>, the Court further addressed the question whether to apply an objective or subjective standard when determining what is a "known risk." This Court held that an objective standard would apply and the degree of negligence would be "determined by the great risk of injury together with the knowledge [a defendant] had or should have had of that risk." <u>Id.</u> at 282, 386 S.E.2d at 818.

The Commonwealth asserts that the record establishes that Forbes had a history of diabetic attacks, resulting in black-outs. The Commonwealth contends that Forbes continued to drive, knowing that he was susceptible to black-outs and that he drove on March 24, 1996, knowing his blood sugar was low and disregarding the known risk that he posed to other motorists. Thus, the Commonwealth contends Forbes' conduct was criminally negligent.

Forbes argues that, because he took precautionary measures and felt "fine" before he drove on March 24, 1996, the evidence did not prove he acted in a criminally negligent manner. We agree.

Hypoglycemia, or low blood sugar, is seen in the diabetic "who takes too much insulin, too little food, or both or over-exercises." 4B <u>Lawyers' Medical Cyclopedia of Personal Injuries and Allied Specialties</u> 27 (James G. Zimmerly, M.D., J.D., M.P.H. ed. 1984). Corrective measures for the condition

include "giving the sufferer generous amounts of glucose by mouth in the form of sugar, honey, candy, or a sweetened beverage." Id. Dr. Nestler testified that he advises his patients to eat mints or drink one-half of a glass of orange juice, wait one-half hour, and check their blood sugar level when they experience low blood sugar. Further, Dr. Nestler testified that Forbes "clearly" did not have the warning signals that most diabetic patients experience when having a low blood sugar attack. Forbes testified that on one prior occasion he had experienced no warning signs prior to his black-out. On another occasion, he blacked-out before he could "treat [him]self."

On these facts, we find that Forbes' conduct did not constitute negligence so gross, wanton, and culpable as to show a reckless disregard of human life. For a diabetic to operate a motor vehicle is not negligence per se. Forbes followed the medical directions he had been given to correct an insulin imbalance.

> "The [factual findings] of the court sitting without a jury will not be set aside unless it is plainly wrong or without evidence to support it. However, a trial court's conclusion based on evidence that is 'not in material conflict' does not have this binding effect on appeal. The trier of fact must determine the weight of the testimony and the credibility of the witnesses, but it 'may not arbitrarily disregard uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with facts in the record.' A court may not base its findings on a suspicion which is contrary to the undisputed positive testimony."

Williams v. Commonwealth, 14 Va. App. 666, 669-70, 418 S.E.2d 346, 348 (1992) (quoting Hankerson v. Moody, 229 Va. 270, 274-75, 329 S.E.2d 791, 794 (1985)).

Forbes checked his sugar level at about 5:00 p.m. on March 23, 1996. He ate breakfast and dinner that day. He took insulin at 5:00 p.m. Forbes also ate a small meal at about 11:30 p.m. on March 23, 1996 before he fell asleep. When he awoke and felt "woozy," Forbes ate "a couple of mints," drank a glass of orange juice, and rested for about fifteen minutes.[1] Forbes stated that he felt "fine" before he drove his car. As he sat in his car, his friend brought him two more mints, which he ate. Carter also testified that Forbes "was driving fine" as she watched him drive away from her house. He had not been advised by his physician to stop operating a motor vehicle.

Therefore, the evidence proved, without contradiction, that Forbes took precautionary measures when he felt "woozy" and suspected he was experiencing a low blood sugar episode. Although Forbes did not check his blood sugar level before he drove, he performed several other acts that are recommended to restore blood sugar level. Further, Forbes testified that he

---

[1]The Commonwealth contends we cannot consider Forbes' testimony that he drank a glass of orange juice because, in his statement to the police given after the accident, he did not say he drank orange juice and because Carter did not testify that Forbes drank orange juice prior to driving his car. However, the Commonwealth presented no evidence to contradict Forbes' positive statement that he drank a glass of orange juice. Therefore, his testimony may be considered by this Court.

felt "fine" before he drove his car.[2]  Moreover, he had

experienced black-outs on only two or three occasions in his

thirty years as a diabetic, with the last black-out occurring in

December 1995.  Under these facts, we cannot say Forbes knew or

should have known that his conduct created a great risk

reasonably calculated to produce injury.  Although Forbes'

conduct may have been negligent under these circumstances, his

negligence did not amount to wanton negligence so culpable as to

show a "reckless disregard of human life."  See Tubman, 3 Va.

App. at 275, 348 S.E.2d at 875.

For these reasons, we reverse the involuntary manslaughter

conviction.

Reversed and dismissed.

---

[2]The record is completely devoid of any medical evidence
concerning Forbes' blood sugar level after the accident.