*125 ELDER, Judge, with whom BENTON, COLEMAN and ANNUNZIATA, Judges,
join, dissenting.
I disagree with the majority’s legal conclusion. I would hold that the evidence is insufficient, as a matter of law, to support an involuntary manslaughter conviction. I believe the evidence fails to support a finding that appellant knew or should have known that driving no more than five minutes to his home once he became sleepy was “ ‘likely to cause injury* ” and that his failure to stop under such circumstances was “ ‘so gross and culpable as to indicate a callous disregard of human life.’” Keech v. Commonwealth, 9 Va.App. 272, 278, 386 S.E.2d 813, 816 (1989) (citations omitted). Therefore, I respectfully dissent.
The Virginia Supreme Court has acknowledged that “the application of distinctions between [the various] degrees of negligence [recognized by the law] is frequently difficult to apply.” Town of Big Stone Gap v. Johnson, 184 Va. 375, 379, 35 S.E.2d 71, 73 (1945). Although the majority correctly sets forth the general principles of law governing the crime of involuntary manslaughter, I consider it helpful to further clarify the distinctions. Ordinary negligence is “failure to use ‘that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury to another.’ ” Tubman v. Commonwealth, 3 Va.App. 267, 271, 348 S.E.2d 871, 873 (1986) (quoting Griffin v. Shively, 227 Va. 317, 321, 315 S.E.2d 210, 212-13 (1984)). Gross negligence “is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence.” Newell v. Riggins, 197 Va. 490, 495, 90 S.E.2d 150, 153 (1955). It is “that degree of negligence which shows indifference to others as constitutes an utter disregard of prudence____ It must be such a degree of negligence as would shock fair minded men although something less than willful recklessness!, i.e., criminal negligence].” Ferguson v. Ferguson, 212 Va. 86, 92, 181 S.E.2d 648, 653 (1971) (emphasis added). Finally, criminal or willful and wanton negligence is “ ‘[m]arked by or manifesting arrogant recklessness of justice, of the rights or feelings of others, ... *126 merciless; inhumane.’” Forbes v. Commonwealth, 27 Va.App. 304, 310, 498 S.E.2d 457, 459 (1998) (citation omitted) (emphasis added).
These distinctions establish that criminal responsibility cannot be predicated upon every act carelessly performed merely because the carelessness results in the death of another. Rather, the negligence must be of such a high degree of “carelessness or recklessness” that the act of commission or “ ‘omission must be one likely to cause death.’ ” Goodman v. Commonwealth, 153 Va. 943, 948, 151 S.E. 168, 169 (1930) (citation omitted) (emphasis added). For example, it is settled law in Virginia that “[a]nyone who falls asleep while operating an automobile on a public road is guilty of a degree of negligence exceeding lack of ordinary care.” Kennedy v. Commonwealth, 1 Va.App. 469, 473, 339 S.E.2d 905, 907-08 (1986); see Newell, 197 Va. at 494, 90 S.E.2d at 152 (in civil context, observing “fact that [a driver] who permits himself to go to sleep while driving is sufficient to make out a prima facie case of want of due and proper care”). Such behavior also may be “sufficient to find the operator guilty of the offense of reckless driving.” Kennedy, 1 Va.App. at 473, 339 S.E.2d at 907-08 (upholding reckless driving conviction where driver admitted he had been sleepy fifteen minutes before unexplained accident and evidence established that family had been on the road for eight hours and that vehicle left no skid marks or other evidence of braking prior to running off the road). However, such evidence, standing alone, proves no more than ordinary negligence or reckless driving and will not support a finding of criminal negligence required for an involuntary manslaughter conviction. See King v. Commonwealth, 217 Va. 601, 605-06, 231 S.E.2d 312, 316 (1977) (citing Richardson v. Commonwealth, 192 Va. 55, 63 S.E.2d 731 (1951)).
A conviction for reckless driving requires proof of driving “on a highway recklessly or at a speed or in a manner so as to endanger the life, limb, or property of any person.” Code § 46.2-852. Violation of this statute “is insufficient to bring the negligent act within the common law definition of manslaughter unless it is so flagrant, culpable, and wanton as to show *127 utter disregard of the safety of others under circumstances likely to cause injury.” King, 217 Va. at 605-06, 231 S.E.2d at 316; see also Darnell v. Commonwealth, 6 Va.App. 485, 489-92, 370 S.E.2d 717, 719-21 (1988) (applying King rationale to violation of statute prohibiting reckless handling of firearm and rejecting argument that such reckless handling equates to recklessness required to prove criminal negligence element of involuntary manslaughter). King clearly distinguishes between acts which constitute reckless driving and acts of recklessness which constitute involuntary manslaughter.
Some states provide by statute that certain acts proximately causing death are crimes. See King, 217 Va. at 605-06, 231 S.E.2d at 316 (citing Annotation, 20 A.L.R.3d 473 (1968)). Virginia’s legislature has enacted such a statute, providing that an unintentional death which results from an act of driving under the influence in violation of specified portions of Code § 18.2-266 constitutes involuntary manslaughter. See Code § 18.2-36.1. Such a conviction requires no proof that “the conduct of the defendant was so gross, wanton and culpable as to show a reckless disregard for human life,” and if the Commonwealth makes such a showing, the defendant is subject to greater punishment for “aggravated involuntary manslaughter.” Id. The legislature, however, has not provided that death resulting from falling asleep while driving constitutes involuntary manslaughter as a matter of law.
To make such a finding, a court must conclude that the act of negligence proximately causing the death would do more than “shock fair minded men,” the language of the standard for gross negligence. See Ferguson, 212 Va. at 92, 181 S.E.2d at 653. Instead, it must be negligence “so flagrant, culpable, and wanton as to show utter disregard of the safety of others under circumstances likely to cause injury.” King, 217 Va. at 605-06, 231 S.E.2d at 316 (emphasis added). As quoted above, we have previously characterized criminal negligence as “ ‘manifesting [an] arrogant recklessness of justice’ ” and rising to the level of being “ ‘merciless ’ ” or “ ‘inhumane.’ ” Forbes, 27 Va.App. at 310, 498 S.E.2d at 459 (citation omitted) (emphasis added). In assessing the degree of negligence *128 involved, a court must consider all “existing circumstances and conditions.” Tubman, 3 Va.App. at 271, 348 S.E.2d at 873.
I do not believe the evidence supports a finding that appellant acted mercilessly or inhumanely when he concluded, albeit incorrectly, that he could safely complete his trip to his home, which was only four-and-one-half miles away when he first became sleepy. In affirming appellant’s conviction, the majority relies in part on this Court’s decision in Hargrove v. Commonwealth, 10 Va.App. 618, 394 S.E.2d 729 (1990). It observes that the facts of appellant’s case “were almost presciently stated in Hargrove, where we noted that had the evidence-... shown a propensity to fall asleep or nod off while driving, such evidence could support a finding that the accused was ‘acting in reckless disregard for human life.’ ” In reversing the involuntary manslaughter conviction in Hargrove, we held:
[T]he evidence does not exclude the reasonable hypothesis that, although Hargrove had worked all night, he had not fallen asleep, had not previously dozed during the trip before the accident, and, although tired and in need of sleep and having only a short distance or a trip of a few minutes to reach his home, he could reasonably have believed that he could negotiate his vehicle a short distance without endangering human life.
Id. at 622, 394 S.E.2d at 731-32. I believe the majority erroneously utilizes Hargrove to support its holding.
First, we did not hold in Hargrove that a driver’s “[having] previously dozed during the trip before the accident” mandated a finding, or even was sufficient to support a finding, that the driver was on notice that he would fall asleep again, causing injury to another, before reaching his destination. See id. at 622, 394 S.E.2d at 732. Even if we purported to make such a finding in Hargrove, it would have been dicta, for no evidence indicated that Hargrove, in fact, had previously fallen asleep during his travel from work to home. The facts in Hargrove proved only that Hargrove knew he was sleepy before leaving for home, which- we found insufficient to prove *129 the criminal negligence necessary to support an involuntary manslaughter conviction. See id. at 621-22, 394 S.E.2d at 731-32.
Second, Hargrove erroneously attempted to distinguish the events in Hargrove from those in Kennedy v. Commonwealth, 1 Va.App. 469, 339 S.E.2d 905 (1986). See Hargrove, 10 Va.App. at 621-22, 394 S.E.2d at 731-32. In Kennedy, we affirmed a conviction for reckless driving upon evidence establishing that Kennedy knew he was tired and subsequently fell asleep at the wheel, running off the road. See Kennedy, 1 Va.App. at 472-73, 339 S.E.2d at 907-08. However, no death resulted from Kennedy’s reckless driving, and we had no occasion to consider whether Kennedy’s acts amounted to criminal negligence. See King, 217 Va. at 605-06, 231 S.E.2d at 316 (holding that reckless driving conviction does not require proof of criminal negligence). Therefore, Hargrove’s attempt to distinguish Kennedy also is dicta and does not control the outcome of this case.[2]
Third, the language in Hargrove necessary to the decision in that case does not support the result the majority reaches. Had appellant fallen asleep and struck the jogger immediately after exiting Interstate 64 onto Gaskins Road before becoming tired, he would have been no more culpable than Hargrove and perhaps even less so. Hargrove knew he was tired before he dozed off and struck the pedestrian, and the record did not establish how far he had to drive. See Hargrove, 10 Va.App. at 621, 394 S.E.2d at 731. Appellant, however, was not tired *130 until he reached a point only five minutes from home. Therefore, when appellant exited Interstate 64, “he could reasonably have believed that he could negotiate his vehicle a short distance without endangering human life.” See id. at 622, 394 S.E.2d at 732. Of course, the evidence establishes that, after appellant exited the interstate, he became sleepy and felt himself “[run] off the road ... after dozing off for [only] a half second.” However, to conclude that appellant acted mercilessly or inhumanely in failing to pull over the instant he felt himself doze would be to ignore other “existing circumstances and conditions” in the case. Those other circumstances indicate that appellant, who was less than five minutes from home at that point, “caught himself drifting four or five times” but was able to “catch himself and ... snap out of it” on each occasion. Thereafter, for about two-tenths of a mile before leaving the road and striking the jogger, appellant maintained the speed limit and engaged in no weaving or other erratic driving.
Although appellant testified he was not sleepy before he left his friend’s home, the trial court was entitled to disbelieve and reject appellant’s testimony. See Speight v. Commonwealth, 4 Va.App. 83, 88, 354 S.E.2d 95, 98 (1987) (en banc). However, rejecting that explanation did not provide affirmative evidence that appellant was, in fact, sleepy before he left his friend’s home. Therefore, the evidence, viewed in the light most favorable to the Commonwealth, did not exclude the reasonable hypothesis that appellant became sleepy, as he told Officer Smith, only after leaving Interstate 64, when he was only five minutes from hpme. Under all these circumstances, I cannot conclude that appellant knew or should have known that his conduct in proceeding the short distance to his home “likely would cause injury to another” or that he acted mercilessly or inhumanely in failing to stop. That his conduct did, in fact, result in death is tragic and may constitute ordinary or even gross negligence, but it does not, without more, support a finding of criminal negligence.
For these reasons, I would reverse appellant’s conviction.

. In Hargrove, in its unnecessary effort to distinguish the facts in Kennedy, the panel noted that Kennedy involved a driver who "knew he was fatigued and sleepy and had been driving several hours in that condition before the accident.” Hargrove, 10 Va.App. at 621, 394 S.E.2d at 731. However, the opinion in Kennedy does not support the assertion that Kennedy "had been driving several hours in [a fatigued and sleepy] condition." Although Kennedy had napped earlier and had been driving for several hours, the only evidence described in the opinion regarding fatigue in the period of time leading up to the accident indicated that appellant “had pulled into a rest stop fifteen minutes earlier to take a nap because he was sleepy” but that he felt refreshed and capable of proceeding after simply walking around. See Kennedy, 1 Va.App. at 470-72, 339 S.E.2d at 906-07.