COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bray and Bumgardner
Argued at Salem, Virginia


EDDIE WAYNE STOVER
                                              OPINION BY
v.    Record No. 2033-98-3            JUDGE RICHARD S. BRAY
                                        DECEMBER 28, 1999
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
                        Porter R. Graves, Jr., Judge

               David E. Haynes (Haynes & Wolfe, P.L.C., on
               brief), for appellant.

               H. Elizabeth Shaffer, Assistant Attorney
               General (Mark L. Earley, Attorney General, on
               brief), for appellee.


     Eddie Wayne Stover (defendant) was convicted by a jury of

involuntary manslaughter in violation of Code § 18.2-36 and

sentenced by the trial court, in accordance with the verdict, to

four years imprisonment.  On appeal, he challenges the sufficiency

of the evidence to support the conviction.[1]  Finding no error, we

affirm the judgment of the trial court.

     "On appeal, 'we review the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable

inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).

_____

     [1] At oral argument, defendant abandoned his contention on
brief that the trial court erroneously refused to suppress
evidence of defendant's intoxication at the time of the offense.

The credibility of the witnesses, the weight accorded testimony, and the inferences to be drawn from proven facts are matters to be determined by the fact finder.  See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).  A finding of guilt beyond a reasonable doubt by the trial court will not be set aside unless plainly wrong or without support in the evidence.  See Code § 8.01-680.

## I.

During the early evening hours of November 19, 1997, Debra Taylor and her husband, William, were traveling along Route 602, a typical two-lane rural highway, en route from Harrisonburg to Shenandoah, Virginia.  Mr. Taylor was the driver, and his wife the front seat passenger.  The posted speed limit was 55 m.p.h., and Mr. Taylor was driving between 45 and 50 m.p.h.  As the couple rounded a curve, both noticed the headlights of two vehicles, one behind the other, "coming up . . . pretty fast" from the rear.  Each "set of lights" was repeatedly alternating from high to low beam, and Mrs. Taylor watched as the nearer of the two, a truck, suddenly "left the road."  Mrs. Taylor testified that the remaining vehicle, a "white car," continued to "come closer," prompting her to caution her husband, "speed up he's coming right at us."  Mr. Taylor immediately "sped up . . . to get away," and Mrs. Taylor then observed the white car also leave the highway.

Intending to render assistance, the Taylors returned to the area of the accident and discovered a white Ford Mustang "in a

-

field," disabled and smoking, with defendant alone inside, "blood coming out of his nose." Fearful of fire, the couple urged defendant to leave the vehicle, but he hesitated, "mumbl[ing]," "where's the guy in the truck." Once coaxed from the car, defendant assured Mrs. Taylor that he was "all right," and continued to question the whereabouts of the "guy in the truck," explaining that he had "hit [the truck] in the rear." During the exchanges with defendant, Mr. Taylor noted that his "speech wasn't very clear," adding, "I smelled alcohol."

Gary Taylor (no relation) came upon the scene shortly after the accident. He observed the white Mustang "sitting on [an] embankment . . . smoking" and asked defendant "if he was hurt, . . . had any problems getting out of the car." Defendant responded, "no," "started . . . out," "stumbling around a little," and Gary "smell[ed] alcohol." Upon learning that another vehicle had also crashed, Gary "proceeded . . . through the field to look" and soon located "a red and black pick-up truck . . . sitting on its side." The driver, Edward Dinges, was found "laying face up, . . . on his back" "at the top of vehicle," fatally injured.

Debra Jean May, an Emergency Medical Technician dispatched to the accident, found defendant "leaning against the trunk of his car," bleeding from the nose. He twice denied May's offers of medical treatment, insisting that he was unhurt. During her encounter with defendant, May was "fairly close to his face" and "distinguish[ed] a smell of alcohol on his breath."

-

Investigation of the accident was initially assigned to Virginia State Trooper P.F. Glovier. Glovier approached defendant, then "partially sitting" in the Mustang, and requested his operator's license. Defendant "began to hand [Glovier] card after card," "numerous cards," including an "insurance card" and a "pocket calendar," before producing the license. Glovier recalled that defendant's speech was "slurred," he was unable to recite his residential zip code, and "had a hard time understanding instructions." "[D]etect[ing] a strong odor of alcohol . . . on [his] breath," Glovier asked that defendant accompany him to the police cruiser. As defendant began to walk, he "was very unsteady," requiring the assistance of both Glovier and another trooper, William L. Jones, Jr.

After Glovier advised defendant of his Miranda rights, defendant inquired, "Is that boy going to be okay? What happened?" Upon questioning by Glovier, defendant first stated that the Dinges truck "hit me" when he was "stuck in the ditch." Defendant admitted consuming a "couple of beers at the Eagle's Club" immediately prior to the accident. Later, at the Sheriff's Department, defendant explained to Glovier, "I had been at the Eagle's Club and . . . on my way home. He [Dinges] hit his brakes, and I couldn't stop in time." He again acknowledged, "I might've had a couple beers earlier at the Eagle's Club."

Trooper Jones assisted Glovier in the investigation and also described defendant as "unsteady," unable to walk without

-

assistance.  Jones identified numerous photographic exhibits of the vehicles which depicted significant damage to the rear of Dinges' truck and the front of defendant's Mustang, including a "contact mark" of "red paint on white paint" on the Mustang.  A search of the Mustang by Jones revealed unopened cans of beer on the "passenger floorboard" and inside the trunk and "a not quite full bottle of vodka," also in the trunk.

## II.

"[I]nvoluntary manslaughter in the operation of a motor vehicle [is an] accidental killing which, although unintended, is the proximate result of negligence so gross, wanton, and culpable as to show a reckless disregard of human life."  King v. Commonwealth, 217 Va. 601, 607, 231 S.E.2d 312, 316 (1977).  Thus, "a higher degree of negligence . . . is required to establish criminal liability for involuntary manslaughter than to establish liability in a civil action for ordinary or even gross negligence. This higher degree of negligence has come to be known as 'criminal negligence.'"  Keech v. Commonwealth, 9 Va. App. 272, 277, 396 S.E.2d 813, 816 (1989); see Conrad v. Commonwealth, ___ Va. App. ___, ___, ___ S.E.2d ___, ___ (1999) (en banc) (distinguishing "simple negligence" and "[g]ross negligence" from the "criminal negligence" necessary to involuntary manslaughter).  "'The cumulative effect of a series of connected, or independent negligent acts' causing a death may be considered in determining if a defendant has exhibited a reckless disregard for human life."

-

Jetton v. Commonwealth, 2 Va. App. 557, 561, 347 S.E.2d 141, 144 (1986) (citations omitted).

In assessing "the degree of negligence sufficient to support a conviction of vehicular involuntary manslaughter, the accused's conscious awareness of the risk of injury created by his conduct is necessarily a significant factor." Keech, 9 Va. App. at 278, 386 S.E.2d at 816. "[W]hen determining what is a 'known risk' . . . [t]his Court held that an objective standard would apply and the degree of negligence would be 'determined by the great risk of injury together with the knowledge a defendant had or should have had of that risk.'" Forbes v. Commonwealth, 27 Va. App. 304, 311, 498 S.E.2d 457, 460 (1998) (quoting Keech, 9 Va. App. at 282, 386 S.E.2d at 818). Stated differently, ordinary negligence becomes "'criminal when accompanied by acts of commission or omission of a wanton or willful nature, showing a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows or is charged with the knowledge of, the probable results of his acts.'" Keech, 9 Va. App. at 279, 386 S.E.2d at 817 (citation omitted).

"Evidence of the consumption of alcohol is admissible [in an involuntary manslaughter prosecution] where the evidence shows that it has affected a person's 'manner, disposition, speech, muscular movement, general appearance or behavior.'" Jetton, 2 Va. App. at 559, 347 S.E.2d at 143 (citation omitted). "[A]lcohol

-

consumed by an automobile driver, even though not enough to cause legal intoxication, may be sufficient to impair his capacity to perceive the dangers with . . . clarity, make the decisions with the prudence, and operate the vehicle with the skill and caution required by the law."[2] Simon v. Commonwealth, 220 Va. 412, 419-20, 258 S.E.2d 567, 572-73 (1979); see also Beck v. Commonwealth, 216 Va. 1, 5, 216 S.E.2d 8, 10 (1975).  Under such circumstances, the debilitating effect of alcohol becomes "an aggravating factor, increasing with its degree, bearing upon the relative culpability of the defendant's conduct" in determining both the measure of negligence and the "appropriate quantum of punishment."  Essex v. Commonwealth, 228 Va. 273, 283, 322 S.E.2d 216, 221-22 (1984).

   "'The application of the distinctions between . . . degrees of negligence is frequently difficult to apply.'"  Forbes, 27 Va. App. at 309, 498 S.E.2d at 459 (citation omitted).  "'Generally, negligence (whether ordinary, gross, or willful and wanton),

---

[2] Code § 18.2-36.1 provides that "[a]ny person who, as a result of driving under the influence in violation of subdivisions (ii), (iii), or (iv) of § 18.2-266, unintentionally causes the death of another person, shall be guilty of involuntary manslaughter."  Thus, a conviction under the statute requires proof both that the accused violated Code § 18.2-266(ii), (iii), or (iv) and that such misconduct caused the death of another, elements not necessary to common law involuntary manslaughter.  See Castillo v. Commonwealth, 21 Va. App. 482, 465 S.E.2d 146 (1995); Pollard v. Commonwealth, 20 Va. App. 94, 455 S.E.2d 283 (1995).  Thus, Code § 18.2-36.1(C) expressly provides that "[t]he provisions of [Code § 18.2-36.1] shall not preclude prosecution under any other homicide statute."

-

contributory negligence, and proximate cause are issues for a jury's resolution. They only become questions of law to be determined by a court, when reasonable minds could not differ.'" Tubman v. Commonwealth, 3 Va. App. 267, 273, 348 S.E.2d 871, 875 (1986) (citation omitted).

Here, defendant was traveling at a high rate of speed while following a vehicle so closely that he was unable to stop when the other driver "hit his brakes."[3] This conduct was rendered more culpable because defendant was driving while his intellectual and motor functions were substantially impaired by alcohol. The measure of such deficits was established by evidence that defendant, immediately after the accident, smelled strongly of alcohol and, despite only slight injury, was confused, behaving irrationally, unable to speak clearly, could not produce his operator's license, walk without assistance, or recall the zip code for his residence.

---

[3] Defendant's suggestion on brief and during oral argument that the decedent's conduct may have been a contributing cause to the accident does not alter our analysis.

> All of the authorities agree that contributory negligence has no place in a case of involuntary manslaughter [and] if the criminal negligence of the [accused] is found to be the cause of the death, [he] is criminally responsible, whether the decedent's failure to use due care contributed to the injury or not.

Hubbard v. Commonwealth, 243 Va. 1, 14, 413 S.E.2d 875, 882 (1992) (citation omitted).

Accordingly, the record clearly supported the finding that defendant knowingly engaged in conduct "so gross, wanton, and culpable as to show a reckless disregard of human life" which proximately caused the accident and resulting death of Dinges. We, therefore, affirm the conviction.

<u>Affirmed.</u>