COURT OF APPEALS OF VIRGINIA


Present:    Judges Elder, Humphreys and Senior Judge Fitzpatrick
Argued by teleconference


DALE LEON KREIDER

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0581-05-4              JUDGE JOHANNA L. FITZPATRICK
                                                    OCTOBER 31, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
James W. Haley, Jr., Judge

Robert J. Rice (Rice, Everhart & Baber, on brief), for appellant.

Denise C. Anderson, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


        Dale Leon Kreider (appellant) contends the evidence was insufficient to support his

conviction for involuntary manslaughter because the Commonwealth failed to prove he was

criminally negligent.  We disagree and affirm his conviction.

                                        BACKGROUND

        "On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).  So viewed, the evidence proved that Emily Cella (Cella)

died in the early morning hours of August 7, 2003, when appellant's tractor-trailer hit and

crushed the car she was driving.  The location of the accident was a construction zone at the

bottom of a small hill on Interstate 95 where three lanes of southbound traffic were directed to

<hr>

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

merge into the right lane. The speed of the merged traffic was approximately five to seven miles per hour.

The Commonwealth presented testimony from five witnesses. Wayne and Andy Jett were towing vehicles south on Interstate 95 the night of the accident. Andy's tow truck was in front of Cella's car. Steven Schneider entered Interstate 95 three miles before the accident scene and saw appellant approach the work zone and attempt to merge into the lane where Cella's car was crushed. Wayne and Andy testified there were several signs warning traffic to merge right due to construction several miles before the work zone, and an illuminated sign was located on the crest of the hill followed by more warning signs. The Jetts and Schneider both testified that appellant's speed was from seventy-five to eighty miles per hour prior to the accident and that they did not see appellant's brake lights.

Trooper Jane Gibbs arrived after the collision and investigated the accident. She established that the posted speed limit was sixty-five miles per hour. After the crash, appellant told Gibbs he did not remember what happened and thought he might have been doing sixty-five miles an hour. Appellant's truck was fully loaded with 35,261 pounds of cargo.

Sergeant Frederick Tyler testified as an accident reconstruction expert. He noted that the weather was dry and there were no defects in the roadway. Tyler examined the physical evidence and found that appellant had a view of one half mile from the crest of the hill to the point of impact and calculated it would take thirty seconds to travel that distance at sixty miles per hour, and twenty-two seconds to travel that distance at sixty-five miles per hour. Tyler found one hundred thirty feet of skid marks from appellant's tractor-trailer prior to impact with Cella's car and gouges in the roadway from where Cella's car was "forced down and into the pavement or pushed along the pavement."

ANALYSIS

"[I]nvoluntary manslaughter in the operation of a motor vehicle [is defined] as an 'accidental killing which, although unintended, is the proximate result of negligence so gross, wanton, and culpable as to show a reckless disregard of human life.'" Greenway v. Commonwealth, 254 Va. 147, 154, 487 S.E.2d 224, 228 (1997) (quoting King v. Commonwealth, 217 Va. 601, 607, 231 S.E.2d 312, 316 (1977)). To sustain an involuntary manslaughter conviction, criminal negligence must be proved. Tubman v. Commonwealth, 3 Va. App. 267, 271, 348 S.E.2d 871, 873 (1986).

> Criminal negligence as the basis for involuntary manslaughter is judged under an objective standard and, therefore, may be found to exist where the offender either knew or should have known the probable results of his acts. Thus, criminal negligence "'is acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct *probably* would cause injury to another.'"

Conrad v. Commonwealth, 31 Va. App. 113, 121-22, 521 S.E.2d 321, 325-26 (1999) (*en banc*) (quoting Tubman, 3 Va. App. at 271, 348 S.E.2d at 873).

"'Inadvertent acts of negligence without recklessness, while giving rise to civil liability, will not suffice to impose criminal responsibility.'" Tubman, 3 Va. App. at 273-74, 348 S.E.2d at 875 (quoting King, 217 Va. at 607, 231 S.E.2d at 316). The defendant must have "had prior knowledge of specific conditions that would likely cause injury to others." Clohessy v. Weiler, 250 Va. 249, 253, 462 S.E.2d 94, 97 (1995). "'"The cumulative effect of a series of connected, or independent negligent acts" causing a death may be considered in determining if a defendant has exhibited a reckless disregard for human life.'" Stover v. Commonwealth, 31 Va. App. 225, 231, 522 S.E.2d 397, 400 (1999) (quoting Jetton v. Commonwealth, 2 Va. App. 557, 561, 347 S.E.2d 141, 144 (1986)).

In assessing "the degree of negligence sufficient to support a conviction of vehicular involuntary manslaughter, the accused's conscious awareness of the risk of injury created by his conduct is necessarily a significant factor." Keech [v. Commonwealth], 9 Va. App. [272,] 278, 386 S.E.2d [813,] 816 [(1989)]. "[W]hen determining what is a 'known risk' . . . [t]his Court held that an objective standard would apply and the degree of negligence would be 'determined by the great risk of injury together with the knowledge a defendant had or should have had of that risk.'" Forbes v. Commonwealth, 27 Va. App. 304, 311, 498 S.E.2d 457, 460 (1998) (quoting Keech, 9 Va. App. at 282, 386 S.E.2d at 818). Stated differently, ordinary negligence becomes "'criminal when accompanied by acts of commission or omission of a wanton or willful nature, showing a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and *the offender knows or is charged with the knowledge of, the probable results of his acts*.'" Keech, 9 Va. App. at 279, 386 S.E.2d at 817 (citation omitted).

Id.

"'Generally, negligence (whether ordinary, gross, or willful and wanton) . . . [is an] issue[] for a jury's resolution. [It] only become[s] [a] question[] of law to be determined by a court, when reasonable minds could not differ.'" Id. at 232, 522 S.E.2d at 401 (quoting Tubman, 3 Va. App. at 273, 348 S.E.2d at 875).

The evidence established that appellant had notice of the approaching construction zone and the need for traffic to slow down and merge right before the accident scene. Testimony from Trooper Gibbs, the Jetts, and Schneider established there was an illuminated sign on the crest of the hill and several other signs warning traffic to merge right for construction. Trooper Gibbs and the Jetts testified there were signs posted two to three miles before the scene of the accident warning of merging traffic, and Wayne testified that one of those signs was an electronic overhead sign "two, three miles" before the crest of the hill. Clearly, appellant was on notice that the road conditions ahead required a modification of his speed. However, appellant continued to travel at a speed of from seventy-five to eighty miles per hour both before and after

he crested the hill, and he failed to slow as he approached the merging traffic that was traveling at five to seven miles per hour. Neither Andy nor Schneider saw appellant slow down before crushing Cella's car. According to Schneider, it looked as if appellant tried to sneak into the right lane behind Andy's truck, but he did not see Cella's car behind Andy's truck.

In sum, appellant failed to heed several warning signs and proceeded toward merging traffic at a construction area at an excessive rate of speed in a fully loaded tractor-trailer. His failure to heed the several warning signs, slow down and drive at a safe speed in addition to his unusual maneuver causing him to crush Cella's vehicle demonstrated a disregard for others and a reckless indifference to the consequences, which he knew or should have known would cause injury to another.

Accordingly, the judgment of the trial court is affirmed.

<u>Affirmed.</u>